**In re Laura L. PUCKETT, Debtor.**

**Bankruptcy No. 94 B 10370.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Feb. 14, 1996.

Arthur Jaros, Richter & Jaros, Oak Brook, IL, for debtor.

Mayer Silber, Office of the District Counsel, IRS, Chicago, IL, for United States.

Craig Phelps, Chapter 13 Trustee, Chicago, IL.

## MEMORANDUM OF DECISION

EUGENE R. WEDOFF, Bankruptcy Judge.

This closed Chapter 13 case is before the court on the motion of the United States of America to reopen the case and vacate the debtor's discharge. The government seeks this relief on the ground that the debtor's Chapter 13 plan failed to provide for full payment of late-filed priority claims. As set forth below, the motion must be denied because it constitutes an improper collateral attack on the order of discharge and the order confirming the debtor's plan.

### Jurisdiction

The pending motion to reopen directly affects a case filed under the Bankruptcy Code (Title 11, U.S.C.), and so is within the exclusive jurisdiction of the district court pursuant to 28 U.S.C. § 1334(a). The grant or denial of discharge is a proceeding arising under the Bankruptcy Code, and so a motion to vacate a discharge order is within the jurisdiction of the district court pursuant to 28 U.S.C. § 1334(b). The district court may refer such cases and proceedings to bankruptcy judges pursuant to 28 U.S.C. § 157(a), and by General Rule 2.33, the District Court for the Northern District of Illinois has done so. Bankruptcy judges are given authority to hear and determine bankruptcy cases, as well as to enter appropriate orders and judgments in core proceedings arising in bankruptcy cases, by 28 U.S.C. § 157(b)(1). The grant or denial of discharge, pursuant to 28 U.S.C. § 157(b)(2)(I) and (J), is a core matter.

### Findings of Fact

The facts relevant to the government's motion are undisputed. In February, 1994, the Internal Revenue Service notified the debtor and her husband that it was claiming an unpaid income tax and a penalty from them, for the year 1991, totalling more than $100,-000. The debtor's position, at that time, was that she should not be liable for this tax and penalty, because they arose from activities of her husband of which she was unaware. *Cf. Resser v. Commissioner,* 74 F.3d 1528 (7th Cir.1996) (discussing "innocent spouse" defense to joint tax liability). In May, 1994, the debtor filed both a case in the United States Tax Court, disputing the government's claim, and this Chapter 13 case. The schedules filed by the debtor in this case listed the IRS as a creditor, but stated the amount of the IRS's claim at zero.

On June 7, 1994, the debtor filed her Chapter 13 plan. It provided that $194 would be paid monthly into the plan, for 36 months, or until all allowed, timely-filed claims were paid in full, but that late-filed unsecured claims would be paid nothing. On June 9, a notice was sent to all of the creditors listed in the debtor's schedules—including the IRS—informing them (1) of the deadline for filing claims under Fed.R.Bankr.P. 3002(c), October 10, 1994; (2) of the date, time, and location for the meeting of creditors held pursuant to Section 341 of the Bankruptcy Code; and (3) of the date, time, and location of the hearing on confirmation of the debtor's plan. The notice also reflected the debtor's scheduling of the IRS claim at zero, and indicated that the maximum contribution the debtor would make toward the plan was 36 payments of $194 (a total of $6984). On August 30, the plan was confirmed. (The debtor filed an amended Chapter 13 plan on August 30, but the terms of this plan were identical to the original one.)

The IRS did not object to confirmation, nor did it file a claim in the debtor's case until January 23, 1995, more than three months after the deadline set forth in the notice had passed, and eight months after the case was filed. The IRS's claim was in the

amount of $120,031.30, of which $102,711.30 was asserted as a priority claim under Section 507(a)(7) of the Bankruptcy Code. Pursuant to the terms of the plan, the Chapter 13 standing trustee paid nothing on this claim.

On March 17, 1995, the standing trustee served a Final Report and Account to all scheduled creditors, including the IRS. The report reflected that the debtor had contributed sufficient funds into the plan to pay all claims as provided by the plan, and that the debtor was therefore entitled to a discharge.[1] The report also noted that a claim of the IRS was "filed late" and not paid. The notice accompanying the report indicated that the trustee would present an order approving the report to the court on April 5, 1995. On that date, again without objection from the IRS, the court entered orders approving the report and discharging the debtor. On the next day, April 6, 1995, the case was closed.

Seven months later, on November 11, 1995, the government filed the pending motion, seeking to reopen the case and vacate the debtor's discharge. The parties briefed and argued the issued raised by the motion, and the court took the matter under advisement.

## Conclusions of Law

*A. The legal background.* This case presents a recurring problem in the law: the conflict between the policies of full adjudication and finality. There are, in this case, two distinct disputes between the Internal Revenue Service and the debtor, Laura Puckett.

The first is whether she owed income tax and a penalty for the year 1991. That dispute was not adjudicated on the merits, because the IRS did not file a claim within the time specified by Fed.R.Bankr.P. 3002(c), and because the debtor's plan provided that late-filed unsecured claims would not be paid. The second dispute is whether, at the time this case was pending, it was appropriate for a Chapter 13 plan to provide for no payment to late-filed priority claims.[2] The IRS seeks to have this second dispute adjudicated now—and the debtor has addressed the issue on the merits—but initially she makes a procedural objection: that the IRS's challenge to the terms of her plan is itself untimely, since the plan was confirmed, she was discharged, and the case was closed, before the IRS asserted its challenge. Under the circumstances of this case, the debtor's procedural objection is correct.

The Bankruptcy Code, and other federal law, presents a number of different procedures through which disputes between creditors and a Chapter 13 debtor may be resolved. All but one have a stated or implicit time limit.

■ ● Dismissal of the case. Perhaps the broadest mechanism for creditor relief in a Chapter 13 case is a motion to dismiss the case. Section 1307(c) of the Bankruptcy Code provides that, on motion of a party in interest, the court may either dismiss a Chapter 13 case (or convert it to a case

1. Only two claims were actually paid through the plan, a claim of American Express Travel for $1278.27, with interest of $153.45, and the debtor's attorneys' fees and costs of $1822.57. These claims, together with fees to the standing trustee of $257.47, resulted in total plan payments of $3511.76. At the rate of payment called for by the debtor's plan, $194 per month, it would have taken more than 18 months for this sum to have accumulated. Since the debtor's plan was completed in less than 10 months, it is apparent that the debtor made payments at a higher rate than the plan required.

2. The argument of the IRS is based on the premise that late-filed unsecured claims are not disallowed under the Bankruptcy Code, a position first advanced in *In re Hausladen*, 146 B.R. 557 (Bankr.D.Minn.1992), and accepted by this court in *In re Rago*, 149 B.R. 882, 885 (Bankr.N.D.Ill. 1992). If late-filed claims are allowed, then, the government argues, late-filed priority claims must be paid in a Chapter 13 plan, pursuant to Section 1322(a)(2). *Cf. In re Vecchio*, 20 F.3d 555, 559 (2d Cir.1994) (requiring priority payment of late-filed tax claims in Chapter 7 case). Other decisions, *e.g.*, *In re Zimmerman*, 156 B.R. 192 (Bankr.W.D.Mich.1993), held that late-filed unsecured claims are disallowed in Chapter 13. The Bankruptcy Reform Act of 1994 resolved this dispute for cases filed after its effective date (October 22, 1994) by adding new Section 502(b)(9) to the Code. This new provision states that late-filed claims are subject to disallowance, but that claims of governmental entities will not be considered late-filed until 180 days after the entry of relief in a bankruptcy case, a potentially longer period than that specified by Fed. R.Bankr.P. 3002(c). (An order for relief is deemed entered on the date of filing of a voluntary bankruptcy case, pursuant to Section 301 of the Code.) The Bankruptcy Reform Act of 1994 does not apply to the present case, because it was filed prior to the effective date of the Act.

under Chapter 7) "for cause." Several potential grounds for relief are listed in Section 1307(c), but they are not exclusive. See *In re Love*, 957 F.2d 1350, 1354 (7th Cir.1992), holding that a lack of good faith, though not a ground specified in Section 1307(c), may constitute "cause" for converting or dismissing a Chapter 13 case. There is no stated time limit specified for the filing of a motion to dismiss, but, by its nature, such a motion can only affect a pending case. Once a case has been closed, there is nothing to dismiss. Moreover, dismissal has the effect of undoing only certain court orders entered during the case, as set forth in Section 349(b)(2) of the Code. Most significantly, the discharge of a debtor is not one of the orders vacated by Section 349(b)(2). Thus, an order of dismissal entered before a Chapter 13 debtor is given a discharge will prevent a discharge from being entered, but dismissal after the grant of a discharge does not vacate the discharge order.

■ • Claim adjudication. Where an unsecured creditor and a Chapter 13 debtor disagree about the validity or amount of the creditor's claim, the Code provides a mechanism for adjudication of the dispute. The mechanism is initiated by the filing of a proof of claim, under Section 501 of the Code, followed by a claim objection, pursuant to Section 502. Section 502(a) provides that claims filed under Section 501 that are not objected to are deemed allowed. If there is an objection, the court determines whether and to what extent the claim should be allowed, pursuant to Section 502(b). The Federal Rules of Bankruptcy Procedure set forth the time limits for filing proofs of claim. For creditors in Chapter 13, the time limit is established by Fed.R.Bankr.P. 3002(c)—90 days after the first date set for the meeting of creditors under Section 341(a) of the Code, with certain narrow exceptions. As set forth above, *supra* n. 2, there was, prior to the Bankruptcy Reform Act of 1994, a dispute regarding the effect of this time limit. In any event, a decision allowing or disallowing a claim is a final, appealable order. *In re Jartran, Inc.*, 886 F.2d 859, 862 (7th Cir. 1989).

■ • Objection to confirmation. In Chapter 13, claims are paid pursuant to a plan proposed by the debtor. 11 U.S.C.

§ 1301. The plan must comply with the provisions of Section 1322(a), including, the requirement, imposed by Section 1322(a)(2), that it provide for "full payment" of all priority claims (*i.e.*, the claims listed in Section 507, including various tax claims). Other provisions of the Code also apply to Chapter 13 plans: Section 1322(b) provides options, with specified conditions, for the treatment of claims; and Section 1325(a) sets forth a number of additional requirements, stating that the court "shall confirm a plan" if it complies with these requirements. Pursuant to Section 1324, creditors are given the opportunity, at a hearing on confirmation, to seek denial of confirmation by objecting to any proposed plan that does not comply with the provisions of Sections 1322 and 1325. The denial of confirmation is a less harsh result than dismissal of the case, in that it allows the debtor the potential for filing a modified plan. *In re Love*, 957 F.2d 1350, 1354 (7th Cir.1992); *see* 11 U.S.C. § 1323 (allowing debtor to modify plan prior to confirmation). Fed.R.Bankr.P. 3015(f) requires that objections to confirmation be filed before confirmation of the plan. The confirmation of a plan is a final, appealable order, *In re Wade*, 991 F.2d 402, 406 (7th Cir.1993), and, under Section 1327(a) of the Code, the terms of a confirmed plan bind all creditors, whether or not their claims are provided for, and whether or not they have objected to the plan. This section creates, then, a special res judicata effect that prevents the bankruptcy court from reconsidering matters that were disposed of by the confirmed plan:

> As a general rule, the failure to raise an 'objection at the confirmation hearing or to appeal from the order of confirmation should preclude ... attack on the plan or any provision therein as illegal in a subsequent proceeding.'

*In re Chappell*, 984 F.2d 775, 782 (7th Cir. 1993), quoting *In re Gregory*, 705 F.2d 1118, 1121 (9th Cir.1983).

■ • Revocation of confirmation. Section 1330(a) allows creditors to request a revocation of an order of confirmation, if the order of confirmation "was procured by fraud." The courts have generally enforced this provision as a limitation on the grounds

for revocation. *See, e.g., In re Pence,* 905 F.2d 1107, 1110 (7th Cir.1990) (an error in valuation cannot be the basis for revocation of confirmation); *Young v. IRS,* 132 B.R. 395, 397 (S.D.Ind.1990) (error in classification of priority claim insufficient ground for reconsideration of confirmation order); *United States v. Edmonston,* 99 B.R. 995, 997 (E.D.Cal.1989) (ineligibility of debtor not a ground for revocation of confirmation); *In re Hicks,* 79 B.R. 45, 47–48 (Bankr.N.D.Ala. 1987) (bad faith cannot be the basis for revocation of confirmation). Like denial of confirmation, a revocation of confirmation leaves the case open, with the potential for the debtor to file a modified plan. 11 U.S.C. § 1330(b). The deadline for requests to vacate orders of confirmation is set by Section 1330(a) at 180 days after the entry of confirmation order.

■ • **Modification of plan.** Even where a creditor is bound by a plan not subject to appeal or revocation of confirmation, the creditor may be able to obtain relief through post-confirmation modification of the plan. This procedure, set out in Section 1329(a) of the Code, provides (among other things) that the holder of an allowed unsecured claim may seek to "increase ... the amount of payments on claims of a particular class." A request for modification does not require that the debtor's circumstances have changed materially from the time of confirmation. *In re Witkowski,* 16 F.3d 739, 742 (7th Cir.1994). Section 1329(a) provides that the deadline for requesting modification of a plan is the completion of payments under the plan. There is a tension between post-confirmation modification and the special res judicata effect of confirmation under Section 1327(a). *See In re Klus,* 173 B.R. 51, 59 (Bankr.D.Conn.1994) (stating that courts should deny modification "if it is determined that res judicata applies").

• **Revocation of discharge.** Under Section 1328(a) of the Code, the court is required to grant a Chapter 13 debtor a discharge "[a]s soon as practicable after completion by the debtor of all payments under the plan." Section 1328(e) provides for revocation of discharge only if obtained by the debtor through fraud, and only if the party requesting the revocation did not know of the fraud prior to discharge. The deadline for re-questing revocation of discharge is one year from the grant of the discharge. 11 U.S.C. § 1328(e).

■ • **Relief from final judgment or order.** Fed.R.Civ.P. 60(b) sets forth a procedure for relief from judgments and final orders in addition to the ones set forth above, and Rule 60 has been incorporated into the Federal Rules of Bankruptcy Procedure by Fed. R.Bankr.P. 9024. However, Rule 9024 states that a complaint to revoke an order of confirmation may be filed only within the time allowed, in Chapter 13 cases, by Section 1330. Among the grounds set out by Rule 60(b) for relief from final orders are "mistake, inadvertence, surprise, or excusable neglect" and "fraud." Each of these grounds requires that a motion for relief be brought within one year of the entry of the order or judgment that is the subject of the motion. *Wesco Products Co. v. Alloy Automotive Co.,* 880 F.2d 981, 985 (7th Cir.1989). Another ground for relief—that the subject order or judgment is void—has no time limit, since it is understood that void orders have no effect. *Rodd v. Region Const. Co.,* 783 F.2d 89, 91 (7th Cir.1986).

Against this background, the positions of the parties can be addressed. The government's motion to reopen this bankruptcy case was filed pursuant to Section 350(b) of the Bankruptcy Code. Section 350(b) allows a case to be reopened, for administering assets, for according relief to the debtor, or "for other cause," and has been interpreted to allow a bankruptcy judge "broad discretion to weigh the equitable factors in each case." *In re Shondel,* 950 F.2d 1301, 1304 (7th Cir. 1991), quoting Michael P. Saber, *Section 350(b): The Law of Reopening,* 5 Bankr. Dev.J. 63, 82 (1987). In some cases, a motion to reopen is brought simply for the purpose of clarifying or supplementing orders that were entered in the case. *E.g., In re Barnes,* 969 F.2d 526, 527 (7th Cir.1992) (motion brought under Section 350 to have particular debt included in order of discharge); *In re Hendrix,* 986 F.2d 195 (7th Cir.1993) (motion brought under Section 350 to exclude insured debt from discharge injunction). Other motions to reopen, however, involve collateral attacks on final orders in the bankruptcy

case, and such motions are "therefore subject, in bankruptcy as in other federal cases, to the strict limitations of Rule 60(b) of the Federal Rules of Civil Procedure." *Barnes, supra,* 969 F.2d at 527.

The government's pending motion is of the latter type: a collateral attack on two orders entered in this case: first, the order confirming the debtor's plan, entered on August 30, 1994; and second, the order discharging the debtor, entered on April 5, 1995, after the debtor completed payments under her plan. If these orders were properly subject to collateral attack under Rule 60(b), then reopening the case would be a proper exercise of this court's discretion. *In re Cisneros,* 994 F.2d 1462, 1465 (9th Cir.1993). If, however, the orders are not subject to collateral attack, then the motion to reopen must be denied, since reopening the case would have no effect. *Cf. In re Mendiola,* 99 B.R. 864, 865 (Bankr.N.D.Ill.1989) (denying debtor's motion to reopen for purpose of amending schedules because the proposed amendment would have had no effect on the debtor's discharge).

*B. Vacation of the discharge order.* The government has presented no independent grounds for vacating the order of April 5, 1995, discharging the debtor. Section 1328(a) of the Bankruptcy Code, as noted above, requires a grant of discharge upon the debtor's completing plan payments. The government does not contest the report of the standing trustee that the debtor in this case completed all of the payments under her plan. Rather, the government's only ground for attacking the discharge order is that the plan itself was improperly confirmed.

Thus, this case presents a substantially different situation than that of *In re Cisneros,* 994 F.2d 1462 (9th Cir.1993), one of the principal authorities on which the government relies. In *Cisneros,* there was no question about the propriety of the order of confirmation or the terms of the debtor's plan. That plan properly provided for payment of a claim of the IRS, and the IRS filed proof of its claim in a timely fashion. The standing trustee, however, failed to process the claim, never paid it, and then incorrectly reported to the court that all payments required under the plan had been made. Acting on this incorrect report, the court entered a discharge order. *Cisneros* holds, under these circumstances, that the order of discharge was properly vacated under the provision of Rule 60(b) that allows relief from orders resulting from "mistake, inadvertence, surprise, or excusable neglect":

> The order of discharge was entered by the bankruptcy court under a misapprehension as to the facts of the case. Had the court been apprised of the actual facts, it would never have entered the order. In our view, this is precisely the sort of 'mistake' or 'inadvertence' that Rule 60(b) was intended to reach.

994 F.2d at 1467.

Here, in contrast, there was no mistake in the entry of the discharge order. Under the plan, as confirmed, the debtor did make all of the required payments. The discharge order, therefore, can only be vacated if the order of confirmation is vacated.

*C. Vacation of the confirmation order.*

*1. Mistake.* In seeking to vacate the order of confirmation in the case, the government cannot successfully make the argument that the order resulted from "mistake, inadvertence, surprise, or excusable neglect"— either by this court or by the IRS—for two reasons. First, as noted above, Section 1330(a) of the Bankruptcy Code allows vacation of confirmation orders only for fraud, which the government has not alleged. Second, even if the "mistake, inadvertence, surprise, or excusable neglect" provision of Rule 60(b) could be applied to an order of confirmation, that provision itself requires that the motion to vacate be brought not more than one year after the order was entered. The government's motion to reopen was filed on November 11, 1995, more than fourteen months after entry of the confirmation order (August 30, 1994).

*2. Voidness.* However, in addition to arguing mistake or inadvertence, the government asserts, in effect, that the confirmation order was void—a ground for relief under Rule 60(b) as to which there is no time limit. A judgment is void, under Rule 60(b), if it was "entered by a court without jurisdiction or in contravention of due process of law." *Wesco Products Co., supra,* 880 F.2d at 984. Under this standard, the confirmation order in the present case would not appear to be

void. First, this court plainly had subject matter jurisdiction to enter a confirmation order. Confirmation is a proceeding that is created by the Bankruptcy Code (Title 11, U.S.C.), and so "arises under" Title 11. *In re Wolverine Radio Co.*, 930 F.2d 1132, 1144–45 (6th Cir.1991). The district court has jurisdiction over proceedings "arises under" Title 11, pursuant to 28 U.S.C. § 1334(b), and pursuant to 28 U.S.C. § 158(a), the district court may refer such proceedings to bankruptcy judges. This district has done so, by local rule (General Rule 2.33). Once a reference has taken place, the bankruptcy judge is granted jurisdiction to hear and determine all "core proceedings" arising under Title 11, and "may enter appropriate orders and judgments." 28 U.S.C. § 157(b)(1). "Confirmation of plans" is a proceeding expressly included in the "core proceedings" designated by 28 U.S.C. § 157(b)(2).

Second, the government has made no assertion that the entry of the confirmation order in this case involved any denial of due process, and there appears to be no basis for such an assertion. Due process, as applied to a creditor in bankruptcy, entitles the creditor to notice of the action that might be taken with respect to its claim, and an opportunity to be heard. *Midway Motor Lodge v. Innkeepers' Telemanagement & Equip. Corp.*, 54 F.3d 406, 408 (7th Cir.1995). Here, the IRS was given ample notice of the confirmation hearing, and was informed both that the debtor valued the Service's claim at zero, and that she proposed to pay no more $7,000 into her plan. This information was sufficient to give the IRS notice that the debtor's plan would not pay the claim of over $100,000 that it later asserted.

The government, however, does not discuss the general law of subject matter jurisdiction and due process in arguing that the confirmation order in this case is void. Rather, its argument is based on two decisions, *In re Escobedo*, 28 F.3d 34 (7th Cir. 1994), and *In re Ekeke*, 133 B.R. 450 (S.D.Ill. 1991). Each of these decisions uses terminology that is difficult to apply, and so a careful review of the opinions is required.

*a. In re Ekeke.* Ekeke, the first of the two decisions, arose from a Chapter 13 case in which the Internal Revenue Service timely filed proof of a priority claim of more than $104,000, prior to the confirmation hearing. The debtor, without objecting to the claim, proposed a plan under which only 10% of the IRS claim would be paid. The IRS did not object to the plan, and the bankruptcy court confirmed it. However, during the next several months, while the case was still pending, a dispute arose regarding the treatment of the IRS claim.[3] As reflected in the bankruptcy court's decision, (1) the standing trustee filed a motion to permit the IRS to seek 100% of its priority claim; (2) the IRS argued either that the plan should be interpreted so as to provide for 100% payment or else that the case should be dismissed under Section 1307 of the Code; and (3) the debtor asserted that the IRS was bound by the terms of the confirmed plan. 1990 Bankr. LEXIS 2926 at *2. The bankruptcy court determined to dismiss the case, finding two "causes" for dismissal: first, that the debtor was ineligible for Chapter 13 relief under Section 109(e) of the Code (which then had a limit of $100,000 in unsecured debt), and second, that the debtor "committed a fraud on the Court" by attempting to confirm a plan that proposed to pay less than 100% of priority claims, as required by Section 1322(a)(2) of the Code.

On appeal, the district court affirmed. In response to the debtor's argument that the IRS waived the question of eligibility by failing to object to confirmation, the district court held that the eligibility requirements of Section 109(e) were jurisdictional, and so could not be waived. 133 B.R. at 452.[4] The

3. The opinion of the bankruptcy court, *In re Ekeke*, 1990 Bankr. LEXIS 2926 at *1 (Bankr. S.D.Ill.1990), reflects that the confirmation order was entered in March of 1990, and that the court considered the matters raised by the parties and dismissed the case by the end of that year.

4. That position has been rejected by a majority of courts, which hold that eligibility for Chapter 13 relief is not a jurisdictional prerequisite. *In re*

*Jones*, 134 B.R. 274, 281 (N.D.Ill.1991); *In re Toronto*, 165 B.R. 746, 756 (Bankr.D.Conn.1994) (each collecting authorities). It appears that the debtor in this case was not eligible for Chapter 13 relief under Section 109(e), as then in effect, since the IRS had asserted a liquidated noncontingent claim against her of more than $100,000. *See In re Knight*, 55 F.3d 231, 235 (7th Cir.1995) (liquidated claims, even though disputed, count toward the eligibility limitation). However, per-

court also held that the debtor's lack of good faith was cause for dismissal under Section 1307(c). *Id.* And finally, the court found that the failure of the debtor to provide for full payment of the IRS's priority claim was additional cause for dismissal. 133 B.R. at 453.

The district court at several points in its opinion referred to the procedure under Section 1307 as dismissal of the debtor's "plan." This phrasing is unfortunate. As discussed above, Section 1307 of the Bankruptcy Code refers to the conversion or dismissal of bankruptcy *cases,* and a Chapter 13 *plan,* though subject to revocation of confirmation or modification, is not subject to dismissal. *Ekeke* did not involve either modification of a plan or revocation of plan confirmation. The order involved in the decision on appeal was dismissal of the *case,* under Section 1307 of the Code, regardless of the inaccurate terminology of the district court's opinion.

As such, *Ekeke* has no bearing on the present case. If the IRS had sought dismissal of the present case, prior to the grant of a discharge to the debtor, as in *Ekeke,* that decision would be relevant. But here, the plan was completed, a discharge granted, and the case closed before the government sought any relief. The dismissal of a closed case would not be meaningful. Moreover, even if dismissal were possible now, it would provide no relief to the IRS, since dismissal does not revoke discharge. See 11 U.S.C. § 349 (revocation of discharge not among the stated effects of dismissal). Most importantly, apart from the question of eligibility which is not at issue here, *Ekeke* did not deal in any way with the question of whether the confirmation order in that case was jurisdictionally defective or otherwise void.

*b. In re Escobedo.* The second decision relied on by the government to establish voidness, similarly involved the dismissal of a case by the bankruptcy court, pursuant to Section 1307, as stated in the bankruptcy court's opinion. *In re Escobedo,* 169 B.R. 178, 181 (Bankr.N.D.Ind.1993). That opinion sets out the circumstances that gave rise to the dismissal: the debtor's confirmed plan

provided for total payments of only $900; after confirmation, the court allowed priority claims of more than $24,000, including substantial tax claims; the debtor's plan did not expressly provide for payment of priority tax claims, but the court found that it should be interpreted, in accordance with Section 1322(a)(2), to provide for payment of these claims in full; since the payments called for under the plan were not sufficient to make full payment of the priority claims, there was "cause to dismiss the case pursuant to 11 U.S.C. § 1307." *Id.* The court did not consider the possibility of revoking confirmation, and did not speak of dismissing the debtor's plan. The question of the validity or voidness of the order of confirmation was similarly neither raised nor discussed.

The district court, in affirming the bankruptcy court's decision in *Escobedo,* recognized that there had been a dismissal under Section 1307 of the Code, but, perhaps due to its reference to *Ekeke,* the court's opinion referred to this result as dismissal of the plan. *Escobedo v. Aikman,* 1993 WL 725091 (N.D.Ind.1993). Nevertheless, the district court plainly intended to affirm dismissal of the case under Section 1307. The court stated that "[f]ailure to provide for full payment of all priority claims in the Chapter Thirteen plan constitutes 'cause' for dismissal under § 1307," and cited *In re Spohn,* 61 B.R. 264, 268 (Bankr.W.D.Wis.1986) for the proposition that "where [plan] payments are insufficient to pay secured claims in full as required [the plan] must be modified; absent modification, [the] case will be dismissed." 1993 WL 725091 at * 3. The district court's opinion, like the bankruptcy court's, contains no discussion of the validity or voidness of the order of confirmation.

The debtor in *Escobedo* further appealed the district court's decision, and the resulting opinion of the Seventh Circuit is the one relied on by the government in the present case: *In re Escobedo,* 28 F.3d 34 (7th Cir. 1994). In this opinion, the court adopted the language of the district court, incorrectly referring to the bankruptcy court's order as one dismissing the plan, rather than the case.

haps in agreement with the majority position, the government has not asserted the debtor's lack of

eligibility as a jurisdictional defect in this case.

*See, e.g.* 28 F.3d at 34, 35 ("[T]he bankruptcy court dismissed Debtor's entire Plan.... [A]ny supposed confirmation was nugatory and properly dismissed.") However, the court reflected the actual posture of the case in summarizing the debtor's argument on appeal:

> "[S]he asserts that the bankruptcy court's order confirming her plan has *res judicata* effect, thus barring the court from later dismissing Debtor's case or from taking any remedial action to allow for the payment of ... priority claims."

*Id.* at 35. The court stated that "[m]andatory requirements such as § 1322(a)(2), by definition, cannot be absent from a confirmable Chapter 13 plan" and concluded with the following holding: "[T]his Plan was invalid for failing to include the mandatory provisions of § 1322(a)(2), and has no *res judicata* effect as to the omitted priority claims." *Id.*

The scope of this decision is not clear. In the governments's view, *Escobedo* holds that because the plan in that case did not provide for full payment of priority claims, as required by Section 1322(a)(2), the order confirming the plan was jurisdictionally void. The government then concludes that the order in the present case is also void, since the plan here failed to provide for payment of all priority claims (due to its exclusion of late-filed claims from payment). However, the better reading of *Escobedo*, suggested by the debtor, is that a Chapter 13 plan which does not provide for full payment of priority claims is "invalid" only in the sense that its improper provisions do not command the special res judicata effect provided by Section 1327(a). Thus, during the pendency of the case, priority claimants who are not being paid in full may obtain modification of the plan, requiring the debtor to make full payment of their claims, despite the res judicata impact of plan confirmation under Section

1327(a); and, if full payment is not possible, or if the debtor fails to make the payments, the case may be dismissed under Section 1307.[5]

■ There are several reasons why the *Escobedo* decision should be read as holding that a plan providing for less than full payment of priority claims simply lacks res judicata effect under Section 1327, rather than holding that the order confirming such a plan is jurisdictionally void. First, the very language of the holding suggests that the "invalidity" of the plan was limited to its failure to provide for full payment of priority claims. Otherwise, it would not be only as to the "omitted priority claims" that the plan had no res judicata effect: if the order of confirmation were jurisdictionally void, the entire plan would be a nullity. Second, the procedural context is inconsistent with a ruling that the order of confirmation was void. The bankruptcy court order affirmed by this decision was not an order vacating or revoking confirmation under Rule 60(b), but an order dismissing the case under Section 1307 of the Bankruptcy Code. Voiding an order of confirmation would not result in dismissal of the case. Third, the Court of Appeals in *Escobedo* did not address the issues of jurisdiction and due process that are necessarily involved in determining the voidness of an order. *Cf. Celotex Corp. v. Edwards,* —— U.S. ——, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995) (reviewing the jurisdiction of the bankruptcy court under 28 U.S.C. § 1334 to determine the validity of an injunction issued under Section 105(a) of the Code). Finally, if the decision is read in the manner suggested by the government, it would present substantial difficulties with the finality of confirmation orders in other contexts. Many of the provisions of the Bankruptcy Code related to the confirmation of plans under Chapter 11 and 13 may be viewed as mandatory.[6]

---

5. *In re Klus,* 173 B.R. 51, 59 n. 13 (Bankr. D.Conn.1994), which appears to be the only currently reported decision considering *Escobedo,* sets forth a similar understanding of its holding:
[M]odification by the trustee to provide for payment of a large administrative claim not provided for by the confirmed plan, but which must be paid under 1322(a)(2), would not offend principles of res judicata. *See Matter of Escobedo,* 169 B.R. 178 (Bankr.N.D.Ind.), aff'd, 1993 WL 725091 (N.D.Ind. May 26, 1993), aff'd, 28 F.3d 34 (7th Cir.1994).

6. For example, in Chapter 13, Section 1322(b)(1) provides that a plan "may not discriminate unfairly" against any class of unsecured claims, an apparently mandatory provision that has given rise to considerable litigation. *See In re Chapman,* 146 B.R. 411, 417–18 (Bankr.N.D.Ill.1992) (collecting authorities). Section 1322(b)(2) prohibits modification of the rights of holders of claims secured by real property that is the debtor's principal residence, a prohibition that was held to be mandatory in *Nobelman v. American Sav. Bank,* 508 U.S. 324, 113 S.Ct. 2106, 124

If the failure of a plan to comply with these provisions renders the order of confirmation void, then confirmed Chapter 11 and 13 plans would be subject to collateral attack, on any number of confirmation issues, for years after plan payments were completed and the debtors discharged.

*Escobedo,* then, does not support the government's position in the present case. If the IRS had sought modification of the debtor's plan, during the pendency of the case, to provide for full payment of priority claims, *Escobedo* would have required that the modification be granted. Moreover, if the plan had been modified in this way, and if the IRS's late-filed priority claim had been allowed, the debtor's failure or inability to pay it in full would have been cause, under *Escobedo,* for dismissal of the case. However, the government did not seek relief until after the case was concluded, at which time it was too late to modify the plan or dismiss the case. And because the order of confirmation was within the jurisdiction of this court and did not deprive the IRS of due process, it cannot now be voided under Fed.R.Civ.P. 60(b).

## Conclusion

For the reasons set forth above, the motion of the United States to reopen this bankruptcy case and vacate the order of discharge granted the debtor is denied. A separate order, reflecting this decision, will be entered.

L.Ed.2d 228 (1993). Its application is also frequently in dispute. *See, e.g., In re Graham,* 144 B.R. 80, 82–83 (Bankr.N.D.Ind.1992). And although the Court of Appeals suggested in *Escobedo* that the provisions for payment of secured claims in Section 1325(a)(5) "may be discretionary," 28 F.3d at 35, other provisions of Section 1325(a), such as the "best interests" test of Section 1325(a)(4), the good faith requirement of Section 1325(a)(3), and the fee-payment provisions of Section 1325(a)(2), can reasonably be seen as mandatory. Finally, the requirements for confirmation of a Chapter 11 plan, as set forth in Section 1129(a) and (b), appear to be mandatory, since the court is directed to confirm a plan "only if all" of the requirements are met. *See, e.g., In re Rocha,* 179 B.R. 305, 306 (Bankr. M.D.Fla.1995) ("11 U.S.C. § 1129 sets forth the conditions for plan confirmation. The conditions are mandatory...").