**In re Robert G. TREMBATH, Debtor.**

**In re Jerry J. JANECEK, Debtor.**

**UNITED STATES of America, Plaintiff,**

**v.**

**Robert G. TREMBATH, Defendant.**

**UNITED STATES of America, Plaintiff,**

**v.**

**Jerry J. JANECEK, Defendant.**

Bankruptcy Nos. 94 B 22771, 91 B 8624.
Adversary Nos. 96 A 00511, 96 A 00510.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

March 10, 1997.

Gregory K. Stern, Chicago, IL, for debtor.

Charles J. Cannon, Vienna, VA, for the I.R.S.

## MEMORANDUM OPINION

RONALD BARLIANT, Bankruptcy Judge.

Both adversary proceedings are before the court on similar disputes with the Internal Revenue Service. The debtors filed petitions under chapter 13 and their plans, which provided that priority tax claims would be paid in full, were confirmed. The IRS, however, never filed a proof of claim in either case. The debtors completed their plan payments, discharge orders were entered and the cases were closed. · The IRS later discovered that the debtors had significant liabilities for "trust fund taxes" and proceeded to attempt to collect those taxes from the debtors. The debtors' attorney, who was the same in both cases, notified the IRS that the taxes had been discharged in bankruptcy. The IRS continued its collection efforts and the debtors moved to have their cases reopened and the IRS sanctioned for violation of the discharge injunction. Once the cases were reopened, the IRS filed complaints to determine the dischargeability of the trust fund taxes. Now pending before this Court are cross motions for summary judgment on those complaints and the debtors motions for sanctions.

## BACKGROUND

The facts in each case, as established by the parties' statements under Local Rule 402 [1], are as follows:

### Robert Trembath, Case No. 96 A 511

Robert Trembath filed a petition under chapter 13 of the Bankruptcy Code on November 15, 1994. During the two years pre-

---

1. The standards for summary judgment have been adequately explained in numerous opinions and need not be repeated here. *See In re Leber,* 134 B.R. 911, 913–14 (Bankr.N.D.Ill.1991).

ceding the filing of the petition he was the sole shareholder and in charge of day-to-day operations of Household Appliance Sales & Service. During that period, Household failed to pay over federal income and employment taxes that had been withheld from the wages of Household's employees. Household also did not file the quarterly employment tax returns (Form 941) until June 4, 1994. Household made an assignment of all of its assets in August 1994.

When Trembath filed bankruptcy in November, 1994, he listed the IRS as a creditor on his schedules. Trembath listed the IRS because he knew of his potential liability for trust fund taxes (as withholding taxes are called), and trust fund taxes are entitled to a priority under § 507(a)(8)(C).[2] He listed the IRS's claim as unliquidated, contingent and disputed. He listed the total amount of the liability as "Unknown." But, in the space where he was asked how much of the debt would be entitled to priority distribution under the bankruptcy code, he said "0." He so scheduled the IRS claim even though he did not owe any taxes other than his potential liability for trust fund taxes.

Bankruptcy Rule 1007(b)(1) requires debtors to file statements of financial affairs in accordance with the official forms. Official Form 7 requires any debtor who has been "an officer, director, managing executive, or owner of more than 5 percent of the voting securities of a corporation" within the two years before their bankruptcies to answer questions 16 through 21 of the statement. Trembath did not answer those questions.[3] If he had answered those questions, his statement would have disclosed his recent relationship to Household, and, according to the affidavit filed by the IRS, would have enabled the IRS to discover his tax liability in time to file a proof of claim.[4] In the event, however, the IRS never filed a proof of claim.

The debtor's plan provided that "[t]ax claims ... entitled to priority pursuant to 11 U.S.C. 507 shall be paid in full...." That plan was confirmed. Trembath made all payments required by the plan and an order was entered on September 11, 1995, discharging him from "all debts provided for by the plan," with exceptions not relevant here. Because the IRS never filed a proof of claim, it never received any payments under the plan.

On December 1, 1995, the IRS sent a letter to Trembath advising him of his liability for trust fund taxes in the amount of $64,332.51. The debtor's attorney responded by a letter dated December 26, 1995, advising the IRS that the debtor had filed bankruptcy and that the civil penalty had been "provided for by the Debtor's Chapter 13 plan." Nonetheless, the IRS assessed Trembath for taxes under 26 U.S.C. § 6672. On the debtor's motion, the bankruptcy case was reopened and on April 25, 1996, the IRS filed this adversary proceeding to determine the dischargeability of its claim for the trust fund taxes.

### Jerry Janecek, 96 A 510

Jerry J. Janecek filed a petition under Chapter 13 of the Bankruptcy Code on April 22, 1991. Prior to that filing, Janecek had been the sole shareholder and in charge of day-to-day operations of LaGrange Automotive, Inc. ("LaGrange"). For approximately two years before the filing, Janecek stopped paying over taxes that had been withheld from LaGrange's employees. Janecek continued to file the quarterly form (Form 941), but failed to make any of the required deposits.

The schedules filed by Janecek with his bankruptcy petition listed the IRS as a creditor, but indicated that the amount was "Unknown" and that the debt was "Contingent–

---

2. Unless otherwise stated, all section references are to the Bankruptcy Code 11 U.S.C. § 101 *et seq.*

3. Indeed, the form of statement he filed did not even include those questions; it stopped after question 15. His declaration under penalty of perjury that all his answers were true and correct therefore apparently had no application to questions 16–21.

4. Question 16, for example, requires an individual debtor to list the corporations of which he was an officer, director, managing executive or significant shareholder within two years before bankruptcy. In Trembath's case the answer would have been Household.

Unliquidated." The chapter 13 statement Janecek was required to complete asked whether he had "operated a business in partnership or otherwise during the past three years?" He falsely answered "NO."

Janecek's chapter 13 plan provided for full payment of all tax obligations entitled to priority under § 507(a)(8) and was confirmed on April 22, 1991. Thereafter, but while the case was pending, the IRS sent Janecek two notices concerning his potential liability for trust fund taxes. Janecek's attorney responded to both notices, advising the IRS that a chapter 13 case was pending and that its actions violated the automatic stay. Notwithstanding these notices, the IRS never filed a proof of claim or took any other action in the case. Janecek completed all payments required under the plan and a discharge order was entered on March 13, 1995.

On July 31, 1995, the IRS issued a notice indicating that it had assessed Janecek for trust fund taxes and penalties in the amount of $18,808.36. The debtor's attorney responded by a letter dated August 15, 1995, advising the IRS that the taxes had been "provided for" in the debtor's plan and discharged. It was not until April 25, 1996 that the IRS filed the present complaint.

## DISCUSSION

The debtors have moved for summary judgment on the basis that the taxes were provided for in their plans and discharged. In its cross-motions for summary judgment the IRS argues that the debtors fraudulently concealed their prior business operations and, therefore, (1) the tax claims were not "provided for" in the plans and therefore not discharged, (2) the debtors are estopped from relying on the discharge, (3) the debtors should not be afforded relief because their hands are dirty, and (4) the "plans" should be "dismissed."

### Discharge of Taxes under Chapter 13

■ Discharge in a chapter 13 case is governed by § 1328(a). That section provides (emphasis added):

(a) As soon as practicable after completion by the debtor of all payments under the plan, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, **the court shall grant the debtor a discharge of all debts provided for by the plan** or disallowed under section 502 of this title, [with exceptions not relevant here].

Under § 1328(a), therefore, a debt is discharged if two conditions are satisfied: the debtor made all the payments required by the plan, and the debt was "provided for" in the debtor's plan. There is no dispute that the debtors made all of the payments under the plan. The only issue is whether the taxes were "provided for."

One of the requirements for confirmation of a chapter 13 plan is that it provide for "full payment" of all claims entitled to priority under § 507(a)(8), which includes tax claims such as these. § 1322(a)(2). Both of the debtors' plans provided that "[a]ll claims entitled to priority under 11 U.S.C. Section 507 shall be paid in full in deferred cash payments...."

The debtors' correctly state that a majority of courts have concluded that the above quoted plan provision satisfies the requirement that a plan provide for payment of the taxes, provided the tax creditor was scheduled or had notice of the bankruptcy case. See Leber, supra, 134 B.R. at 914–915 (the plan does not have to name the governmental creditor as long as it generally provides for the payment of taxes); In re Gregory, 705 F.2d 1118 (9th Cir.1983); In re Vlavianos, 71 B.R. 789 (Bankr.W.D.Va.1986); In re Daniel, 107 B.R. 798 (Bankr.N.D.Ga.1989). Indeed, the leading treatise on chapter 13 has a three page footnote citing cases (most of which involve the IRS or state taxing authorities on the losing side) in support of the statement that: "If a creditor fails or refuses to timely file proof of a prepetition claim, the claim is discharged if the plan provided for payment of the claim had a proof of claim been filed." II K. Lundin, Chapter 13 Bankruptcy, § 9.13, fn. 36 (1991).

■ None of the cases relied upon by the debtors, however, involved a fraudulent concealment of an individual debtor's prior

business operations.[5] Here, the concealment of the prior business operations was equivalent to failure to give notice of the pending bankruptcy petition since it precluded the IRS from tying the debtors' contingent liabilities for the trust fund taxes to the entity with primary responsibility for payment. Where the petition does not give the creditor sufficient notice to allow the creditor to determine that a debt exists, it would be inconsistent with notions of due process and fundamental fairness [6] to hold that the debt was "provided for by the plan." *See In re Hairopoulos v. United States*, 193 B.R. 889, 892 (E.D.Mo.1996)("If [ ] the IRS did not receive proper notice of the proceeding, then its claim cannot be considered to have been provided for by the plan."); *In re Friedman*, 184 B.R. 883 (Bankr.N.D.N.Y.1994), *aff'd*, 184 B.R. 890 (N.D.N.Y.1995); *In re Gamble*, 85 B.R. 150 (Bankr.N.D.Ala.1988). The present cases are more analogous to those of the debtors who operated under other names or trade names. In cases where the debtor fails to give the creditor notice of the aliases or trade names, the courts have concluded that the notice was inadequate and the debts not discharged. *See Friedman, supra; Gamble, supra.*

In *Friedman*, although the petition listed an employer identification number for a prior business, it did not set forth the name of the business nor did any of the notices sent to the state taxing authority include any reference to any business operated by the debtor.[7] The taxing authority timely filed a secured

proof of claim (after confirmation), but the plan provided that no payment would be made and the lien would be terminated. The taxing authority did not object to the plan and it was confirmed. When the debtor filed a motion to disallow the claim, the court concluded that the notice was inadequate to bar the taxing authority from enforcing its lien stating:

> Initially, [ ], it is the debtor who has the responsibility for providing creditors with specific substantive notice on which they can make an informed decision as to whether to involve themselves in the 'confirmation process.' *A creditor should not have to undertake its own independent investigation to discover the true identity of a debtor in order to protect its rights.* Friedman, 184 B.R. at 890 (emphasis added). *See also In re Anderson*, 159 B.R. 830 (Bankr.N.D.Ill.1993).[8]

■ *Gamble* did not involve debts to taxing authorities, but did involve a debtor who failed to disclose a prior alias. The petition was filed under the name Eula Kyle Gamble; she had previously been known as Eula M. Kyle.[9] Although the debtor scheduled her debt to SouthTrust Bankcard, the creditor did not have an account in the debtor's name and therefore did not file a proof of claim. Due to the inadequate notice, the court concluded that the debt had not been "provided for" and was therefore not discharged under § 1328. The rule that a debt is provided for in a plan only if the creditor

---

**5.** In *Leber* the taxing authority was not scheduled, but it received notice of the chapter 13 case by the Bankruptcy Clerk's Office. A corporation owned by the debtor was being liquidated under chapter 7. The corporate case was referenced in the chapter 13 case so the taxing authority had the ability to tie the individual debtor to a corporate tax. Unlike *Leber*, here the IRS had no way of tying the debtors to the corporate liabilities due to the debtors' concealment of the prior business operations. The remaining cases relied upon by the debtors did not involve "trust fund" taxes, where an individual debtor's liability is contingent upon non-payment by the business entity. Those cases are, therefore, inapposite.

**6.** The due process clause does not apply to governmental entities; instead, courts apply a test of fundamental fairness. *In re Anderson*, 159 B.R. 830, 836–838 (Bankr.N.D.Ill.1993), *citing, United*

States v. Cardinal Mine Supply, Inc., 916 F.2d 1087 (6th Cir.1990).

**7.** Failure to provide that information in the petition was in violation of Fed. R. Bankr.P. 1005.

**8.** *Anderson* involved similar facts, but the issue was whether the taxing authority should be permitted to file late claims under the circumstances. Like the debtors in our case, Mr. Anderson also left the questions in the statement of financial affairs concerning past business operations blank. The court concluded that the debtor's failure to complete the schedules "was a gross abuse of the bankruptcy process" and equity required allowance of the late claim. *Anderson*, 159 B.R. at 839–40.

**9.** Both names should have been listed in the petition under Bankr.Rule 1005.

had adequate notice follows from the rule that a claim is allowed only if a proof of claim is filed. See, § 502(a). A creditor deprived of adequate knowledge will not file a proof of claim. In that event, the debt will not be paid no matter what the plan says. A debtor has an obligation to complete the petition and schedules completely and accurately. *Anderson* at 839. Where the debtor fails to satisfy that burden, it is not the creditor who should suffer.[10] In the present cases, the debtors' failure to answer the questions concerning prior business operations prevented the IRS from tying the individual debtors' contingent liabilities to the entity primarily responsible. This Court concludes that notices of the individual cases were insufficient to satisfy due process and fundamental fairness. While the IRS received notice of the relationship between Mr. Janecek and La-Grange while the case was still pending, the notice was not received until after the plan had been confirmed. Accordingly, this Court finds that the taxes were not "provided for" by the plan and were therefore not discharged under § 1328(a). Although this conclusion resolves the cross motions for summary judgment (in the IRS' favor), the Court will address the remaining issues raised by the parties.

**Equitable Grounds for Denying Effect of Discharge**

Alternately, the IRS argues that the debtors should be estopped from relying on the discharge, or denied relief under an "unclean hands" theory because they fraudulently concealed their liabilities for trust fund taxes. The problem with these arguments is that they are being made after two final, appealable orders have been entered (the confirmation and discharge orders). *In re Puckett,*

193 B.R. 842, 845 (Bankr.N.D.Ill.1996). In other words, the IRS is attempting to collaterally attack final orders entered in both these cases.[11] Such attacks are, however, severely restricted.

■ Section 1328(e) sets forth limited means for revoking discharge orders. It allows a court to set aside a discharge order for fraud, but the deadline for requesting this relief is one year from entry of the discharge order. That time limit has expired in both cases so the remedy under § 1328(e) is not available.

■ At least one court has applied Fed. R.Civ.P. 60 (applicable to bankruptcy proceedings by Fed.R.Bankr.P. 9024) to revoke a discharge order. *See In re Cisneros,* 994 F.2d 1462 (9th Cir.1993). In *Cisneros,* however, the IRS had timely filed a proof of claim but was never paid. The standing trustee incorrectly advised the court that all plan payments had been made and the court entered a discharge order. The order should not have been entered and the court vacated it under Rule 60(b). Since Rule 60(b) conflicts with an express provision of the Bankruptcy Code (§ 1328(e)), most courts have limited to its holding to a court's "inherent power to correct its own clerical errors." *Daniels,* 163 B.R. at 897, quoting, *In re Ford,* 159 B.R. 590, 593 (Bankr.D.Or.1993). This Court agrees that Rule 60(b) should not be generally applied to vacate discharge orders and that *Cisneros* should be limited to its facts.[12]

Because the orders of discharge can no longer be revoked, there is no reason to consider the underlying grounds asserted for revocation, namely the debtors' failure to fully disclose their prior business operations in their Statement of Financial Affairs and

---

**10.** The Debtors claim that they answered the questions correctly because they were "employees" of their businesses. That claim is frivolous. The questions had to do with their ownership and operational control of their business entities. That they were technically employed by the entities they owned and controlled is wholly beside the point.

**11.** This is not the first time the IRS has found itself in this position and it has raised many different theories to avoid the harshness of this result, but generally to no avail. *See United*

*States v. Lee,* 184 B.R. 257 (D.Va.1995) (arguing that liability for trust fund taxes arises when the "responsible officer" is assessed); *Puckett* (raising similar arguments to those propounded here).

**12.** Even if Rule 60(b) were available, relief from final orders on the grounds of "mistake, inadvertence, surprise, or excusable neglect" and "fraud" must be requested within one year of entry of the order.

other allegations of fraudulent concealment. No matter how much evidence the IRS may have in support of these arguments, concepts of finality and res judicata would prevent them from raising them this late in the game.

**Dismissal of the "Plan"**

Finally, the IRS contends that this Court should dismiss the debtors' plans, since confirmation was obtained by subterfuge. The argument makes no sense because a plan is not "dismissed." A plan is either confirmed or not confirmed; it is never "dismissed." A case may be dismissed (§ 1307), but not a plan. Moreover, if what the IRS is really asking for is to have the confirmation orders revoked, it faces the same problems as it does obtaining revocation of the discharge order. It has waited too long. An order of confirmation may be revoked under § 1330(a) if the order of confirmation was procured by fraud, but the request for revocation must be made within 180 days after entry of the confirmation order.

In asking this Court to "dismiss the plans," the IRS relies upon *In re Ekeke v. United States*, 133 B.R. 450 (S.D.Il.1991), an opinion which was thoroughly discussed and rejected by Judge Wedoff in a similar case involving the IRS. *See Puckett, supra.* As explained by Judge Wedoff, the court in *Ekeke* repeatedly referred to dismissal of the debtor's "plan" when the relief actually provided was dismissal of the case under § 1307. Moreover, the *Ekeke* court failed to even consider limitations on revocation of confirmation contained in § 1330.

In any event, the "plan" in *Ekeke* was dismissed before an order of discharge was entered. Consequently, even if that opinion were correct, it does not govern the outcome in this case. Accordingly, the Court rejects the IRS' argument that the "plan" or case should be "dismissed."

**CONCLUSION**

The debtors failed to disclose prior business operations in their schedules. While the IRS was listed as a creditor, the information omitted by the debtors prevented the IRS from ascertaining that they had a claim against the debtors for trust fund taxes. Because the notice did not comply with due process and fundamental fairness, the Court finds that the trust fund taxes were not "provided for by the plan" and, therefore, were not discharged. Accordingly, the debtors' motion for summary judgment are denied and the IRS' cross-motions for summary judgment are granted on the issue of discharge of the taxes. Because the taxes were not discharged, the IRS cannot be sanctioned for attempting to collect the taxes. Accordingly, the debtors motions for sanctions against the IRS are also denied. Separate orders will be entered in accordance with this Opinion.