**In re Robert M. HERNDON, Ruth M. Herndon, Debtors.**

**Bankruptcy No. 90–52023.**

United States Bankruptcy Court, E.D. Kentucky.

Aug. 24, 1995.

---

## MEMORANDUM OPINION

JOE LEE, Chief Judge.

This case was heard by the court on July 6, 1995, on the objection of the chapter 13 trustee to allowance of the claim of the Internal Revenue Service ("IRS") filed herein on October 1, 1992. The claim, in the amount of $1167.59, is for the income tax liability of the debtors for the tax period ending 12/31/89. The trustee objects to allowance of the claim on the ground it was filed after the last day for filing claims as fixed by Rule 3002(c), Federal Rules of Bankruptcy Procedure. The IRS responds that correct service was not made upon the IRS, depriving it of notice of the bankruptcy and the procedural due process afforded creditors.

The debtors filed a petition for relief under chapter 13 of the Bankruptcy Code in this court on October 11, 1990. The first date set for the meeting of creditors called pursuant to section 341(a) of the Bankruptcy Code was November 26, 1990. The meeting was held on that date. Thus, the last day for filing claims was 90 days after that date or February 24, 1991.

The debtors did not list the IRS as a creditor in any schedules to the petition. The debtor's plan filed with the petition and first and second amended plans stated in paragraph 3 thereof that there were no priority claims. The second amended plan which was confirmed by the court on April 26, 1991 made no provision for the payment of any claims entitled to priority under section 507 of the Code as mandated by 11 U.S.C. § 1322(a)(2).

Therefore, the claim of the IRS was not dealt with by the plan. The master mailing matrix for the debtors' case lists the IRS at an address in Cincinnati, Ohio, an address used for filing tax returns, but does not list an address in Louisville, Kentucky, an address for special procedures.[1] The IRS

Ginger Knight, Lexington, KY, for Debtor.

Charles H. Keen, Tax Division, Dept. of Justice, Washington, DC, for I.R.S.

Sidney N. White, Chapter 13 Trustee, Lexington, KY.

1. The IRS cites Local Bankruptcy Rule 107 (E.D.Ky.) for its argument the local rule requires service upon the IRS at the Louisville, Kentucky address. The IRS is correct that under the rule in effect in October of 1990 the master address list in a chapter 11 case was required to include service upon the IRS at the Louisville address, whether or not taxes were owing. However, the rule was silent as to any such requirement in a chapter 13 case.

indicates that it did not receive notice of the section 341 meeting, of the last day for filing claims, or of the hearing on confirmation of the plan.

The debtors' petition lists secured debts totalling $284,038, $228,345 of which were incurred for the purchase of real property in Paris and Millersburg, Kentucky—debts associated with the real estate and construction businesses of the debtors. The petition lists unsecured debts in the total amount of $4090.

The debtors' confirmed plan provided that they would surrender to secured creditors a number of pieces of collateral (a mobile home, heavy equipment, a motor vehicle), and would pay to the chapter 13 trustee the sum of $790 per month for 60 months or a total of $47,400 for the payment of the claims of creditors and administrative expenses. With the exception of arrearages in the amount of $2728 to be paid from payments under the plan made to the trustee, payments on debts secured by real estate were to be maintained and paid by the debtors directly to the mortgagees. Unsecured creditors were to be paid to the maximum extent possible. The plan was a so-called pool plan, which means that the amount to be paid on any unsecured claim, including the unsecured portion of a partially secured claim, would be determined after payment of secured claims, interest on secured claims, and expenses of administration of the case.

On September 10, 1992, after the plan had been in process approximately seventeen months,[2] the debtors filed an amendment to

Schedule E listing four debts totalling some $6300 owed to taxing authorities. Three of the debts are for pre- and post-petition property taxes and one is a debt in the amount of $1456.90 owed to the IRS for 1989 income taxes. On October 1, 1992 the IRS filed its proof of claim in the amount of $1167.59 for income taxes for 1989 which became due on April 15, 1990 plus penalty and interest.[3] Shortly thereafter, on October 5, 1992, the trustee proposed modification of the plan pursuant to 11 U.S.C. § 1329 in order "to permit the debtors' property taxes to be paid through their Chapter 13 plan." Such property taxes are secured by a statutory lien on the debtors' real estate. Plan payments were to be increased from $790 per month to $890 per month for the remaining 36 months of the plan, making the total paid into the plan $51,160 [4]. In addition, the debtors would pay such amounts as needed in order for the trustee to pay any post-petition claims and notice charges. The IRS was notified at its Cincinnati, Ohio address of this proposed modification, and no objection was filed by the IRS or any other interested party. The modified plan proposed by the trustee was confirmed on November 18, 1992.

The brief of the IRS states that it first received notice of the chapter 13 case on September 9, 1992 [5] and filed its proof of claim on October 1, 1992.

On December 9, 1994 the court confirmed a further Amended Plan as proposed by the debtors. Under that plan the Herndons are

---

The local rule currently in effect includes the same requirement in a chapter 11 case and also states:

> The master list submitted with a chapter 7, chapter 12 or chapter 13 case shall include the address of the IRS or the Commonwealth of Kentucky, Revenue Cabinet, only if the debtor owes taxes to those entities.

Thus, even under the rule currently in effect, the debtors would not have been required to give notice to the IRS at all, whether at the Cincinnati or Louisville address, since the debtors did not believe they owed taxes at the time of filing of the petition and since the case is one under chapter 13.

2. On September 17, 1991 an agreed order was entered suspending the debtors' chapter 13 payments for a period not to exceed 60 days.

3. On June 27, 1994 the IRS filed a proof of claim in the amount of $1065 for income taxes which became due on April 15, 1991 ($447) and April 15, 1994 ($618). This claim for taxes which became payable while the debtors' chapter 13 case is pending is allowable under 11 U.S.C. § 1305. There was no objection to or question as to allowance of this claim for post-petition taxes, and the trustee's report of 7/31/95 indicates the claim was paid in full on 10/31/94.

4. One payment of $950 was made.

The trustee's motion states that $52,110 would be paid into the plan, a difference of an additional $950 ($950 + $19,120 [23 × $790] + $32,040 [$890 × 36] = $51,160).

5. The brief also states that the debtors' 1989 income tax return was filed on March 11, 1992.

paying $775 each month until $108,131 is paid into the plan, at which time the plan will terminate. This plan provides for payment of unsecured claims in full and maintenance of payments on debts secured by real estate owing to Saylersville National Bank in the total amount of $178,000.

The trustee reports that as of July 31, 1995 the total paid into the plan is $92,175.48 [6] with $89,245.85 having been paid to creditors. Factually, it appears that unless the debtors make a large lump sum payment they will not have paid into the plan $108,131.00 by April 26, 1996, at which point in time the plan will have been in process five years, the maximum period permitted by law. 11 U.S.C. § 1322(d). If the debtors are unable to make such a lump sum payment further modification of the plan may be required.[7]

**CONCLUSIONS OF LAW:**

In *In re Gray*, 174 B.R. 228 (Bankr. E.D.Ky.1994), this court held that the IRS was not denied due process by disallowance of its untimely, unsecured claim, a claim filed 9 months after the last day for filing claims, because the IRS claim was not provided for in the debtor's chapter 13 plan and consequently remained fully collectible after the case was concluded.

The same result as reached in the *Gray* case is reached here. A claim for a prepetition unsecured tax debt must be filed within 90 days following the last day of the first meeting of creditors. Rule 3002(a), (c), Federal Rules of Bankruptcy Procedure. The IRS claim, although accorded priority in payment under 11 U.S.C. § 507(a)(7), is an unsecured claim. Since the IRS claim was not dealt with by the second amended plan confirmed by the court and the IRS did not receive notice in time to file a claim and participate in the debtors' plan, the IRS claim remains fully collectible after the chapter 13 case is concluded. 11 U.S.C. § 1328(a). The discharge granted to debtors under this section discharges them only from those debts dealt with by the plan. Meanwhile, the plan is binding on the IRS. 11 U.S.C. § 1327(a). Due Process concerns are not implicated; the right of the IRS to collect its claim is simply abated until the plan payments are completed.[8]

The trustee's objection to allowance of the claim of the IRS for prepetition taxes for 1989 is sustained. However, any discharge granted to the debtors upon completion of the plan will not release the debtors from their obligation to pay the taxes represented by the claim of the IRS.

---

**6.** On 1/27/94 an agreed order was entered suspending the debtors' chapter 13 payments for a period not to exceed 60 days.

**7.** The court notes that on January 31, 1992 the trustee received a lump sum payment of $58,620.25. These funds were derived from the sale of real estate and were disbursed to Republic Savings Bank for credit on the mortgage of the bank on the real estate. Otherwise, the debtors had paid to the trustee $44,408.39. They still owed $15,102.36 as of July 31, 1995.

**8.** The Fifth Amendment accords due process of law to persons. A governmental entity is not a "person." The Fifth Amendment protects persons from the government; it does not necessarily protect one branch of government from actions of another branch.