**In re Morris J. ELSTIEN, Debtor.**

**Bankruptcy No. 96 B 26589.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

July 27, 1999.

---

Tom Vaughn, Chicago, IL, trustee.

Kerry M. Lavelle, Chicago, IL, for Debtor.

### Memorandum Opinion

RONALD BARLIANT, Bankruptcy Judge.

■ Two taxing authorities have moved for various forms of relief in this Chapter 13 case because the Debtor did not properly schedule their claims and falsely answered questions on his statement of financial affairs. Before filing his petition, Debtor Morris J. Elstien had been notified that the United States of America, on behalf of the Internal Revenue Service ("IRS"), proposed to assess a "trust fund recovery penalty" of $553,427.50, and the Illinois Department of Revenue ("IDR") had notified him of its claims for sales and trust fund taxes.[1] Nevertheless, he did not disclose those facts in his schedules or statement of financial affairs. Disclosure of those claims would have revealed that the amount of unsecured claims against the Debtor rendered him ineligible for chapter 13 relief. Although one of the claimants, the IRS, had actual notice of this case in plenty of time to file a proof of claim and thereby protect its rights, the other, the IDR, did not.

The Debtor's false and misleading filings prejudiced the rights of both moving creditors and led this Court to confirm a plan in a case in which the Debtor was not eligible for relief. These facts constitute cause to

---

1. The "trust fund" taxes at issue in this case include federal income and social security taxes that employers must withhold from wages of their employees. *See e.g., Bowlen v. United States,* 956 F.2d 723 (7th Cir.1992). Under the statutory scheme for collection and payment of the withheld taxes, they constitute a special fund held in trust for the United States. *See id.* To protect against losses where an employer fails to comply with its withholding obligations, § 6672(a) of the Internal Revenue Code provides that "Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over...." 26 U.S.C. § 6672(a). *Id.*

dismiss this case under § 1307(c)[2], and the Court will do so.

## BACKGROUND

### Bankruptcy Proceedings

The Debtor filed a petition for relief under chapter 13 on October 7, 1996. As required by § 521 and Fed. R. Bankr.Pro. 1009(b), the Debtor filed schedules of assets and liabilities and a statement of financial affairs, in the official forms required by Rule 1009. The debts included in the Debtor's schedules were an unsecured priority claim of $50,000 owed the IRS and $58,813.91 owed general unsecured creditors.

The Debtor's chapter 13 plan called for payment of creditor claims over a term of 60 months. The Debtor's plan provided that "[c]laims entitled to priority under 11 U.S.C. § 507 shall be paid in full in deferred cash payments as provided in the Petition ..." In addition, the exhibits to the plan listed priority federal tax claims totaling $120,000. The Debtor would later explain that the total was comprised of a claim in the amount of $50,000 for 1996 estimated federal income taxes, and a claim in the amount of $70,000 for 1994 income taxes. (In fact, the scheduled 1994 tax claim was secured by a lien on the Debtor's residence, which was noted in the schedules, but that omission in the plan does not form the basis of the Court's decision to dismiss this case.) Nothing in the schedules or plan mentions any claim by the IDR.

In his statement of financial affairs, the Debtor answered "None" to question 16, which asked whether he had been a corporate officer or owned more than five percent of the securities of any corporation within the two years before the commencement of the case. The Debtor further stated in his response to question 4(a) that there were no suits or administrative proceedings then pending against him. Neither response was true. The Debtor had been the president and a major shareholder of A.S.A.P. Mail Service, Inc. ("ASAP") within the two-year period. Also, the Debtor was involved in administrative proceedings with both the IRS and the IDR with respect to ASAP's unpaid 1994 trust fund and sales taxes and related penalties at the time of his bankruptcy filing.

The meeting of creditors in the chapter 13 case was held on November 19, 1996. On November 20, 1996, the IRS filed a proof of claim, asserting a secured claim of $60,394.08 for 1994 income taxes. Several days later, the Debtor amended his schedule of unsecured priority claims to reflect three claims for taxes. Amended Schedule E listed the following claims and amounts: (1) "1994 Notice only"—$0.00, (2) "1996 Estimated Taxes"—$50,000.00, and (3) "1994 trust fund recovery penalty"—$10.00. The amended schedule did not name the business entity with primary responsibility for the trust fund taxes, nor is there any reason for listing it at $10.00; the Debtor had long before been told that the claim was for $553,427.50. Again, the IDR claim was not mentioned.

The IRS did not file a claim for the trust fund recovery penalty related to ASAP, and the IDR filed no claim at all. The bar date for filing proofs of claim in the case was February 18, 1997, and an order confirming the Debtor's plan was entered on March 10, 1997. After his plan had been confirmed, the Debtor filed an amended proof of claim on behalf of the IRS for $50,000.00 in 1996 estimated income taxes. Shortly thereafter, in a motion to amend his plan, the Debtor explained that the IRS had failed to file a proof of claim with respect to his 1996 estimated taxes and he wanted to ensure that the 1996 taxes would be included in the plan. This Court entered an order confirming the amended plan on June 2, 1997.

---

**2.** Hereafter, unless otherwise noted, all section references are to the bankruptcy code, 11 U.S.C. § 101 *et seq.*

The IRS filed its "Motion for Relief," which includes a request for dismissal of the case, in December 1998. The IDR filed its motion asking for dismissal or relief from the automatic stay in May, 1999. The IDR has since abandoned its request for relief form the stay; it now limits its request to dismissal.

### Administrative Proceedings

On August 30, 1995, more than a year before the Debtor filed his chapter 13 petition, the IRS informed the Debtor of a proposed assessment against him of $553,427.50, on account of employment taxes owed by ASAP for the third and fourth quarters of 1994. The Debtor protested the assessment in an October 24, 1995, letter, which triggered an IRS appeals process.

Several weeks after the Debtor filed his chapter 13 petition, the IRS employee handling the protest ("Appeals Officer") informed the Debtor's attorney that an appeals conference would be held on November 19, 1996. It is not clear whether the Debtor attended that conference, which would have been held on the same day as the § 341 meeting in his bankruptcy case. In any event, on December 4, 1996, the Appeals Officer sent the following letter (emphasis added) to the attorney representing the Debtor in the tax matter:

> Per our telephone conversation, *Mr. Elstien has filed a petition for Chapter 13 Bankruptcy.* On the advice of the attorney handling the bankruptcy, Mr. Elstien does not want to exercise his appeal rights at this time. *I have notified the collection officer who was assigned to this case.* I want to make sure that you understand that if Mr. Elstien waives his appeal rights, the collection officer's determination that he is liable for the 100% penalty will stand. The tax will be assessed and only the collection process will be suspended until the bankruptcy proceedings are completed. Mr. Elstien must then pay the tax and file a claim.

The IRS Appeals Officer sent that letter more than two months before the last date for filing claims in this bankruptcy case, and three months before the Debtor's plan was confirmed. Therefore, at least one IRS employee with responsibility for and knowledge of the proposed trust fund recovery penalty against the Debtor knew in ample time to file a proof of claim and other pleadings that the Debtor had filed a bankruptcy petition.

The Debtor did not abandon his administrative appeal. Instead, on December 10, 1996, the Debtor's bankruptcy attorney submitted a power of attorney authorizing him to represent the Debtor with respect to the 1994 trust fund recovery penalty. On April 11, 1997, the IRS informed the Debtor of its determination that he was liable for the trust fund recovery penalty. The Debtor's attorney's April 21 letter stated that "we are currently reviewing Mr. Elstien's financial matters very carefully including his liabilities under the Chapter 13 plan and his debt limitations under the Chapter 13 plan to be able to resolve this matter with the Internal Revenue Service." April 21, 1997, was after the claims bar date and plan confirmation, but before confirmation of the amended plan. It was also about 20 months before the IRS filed the present motion, which is the IRS's first action in this case with respect the trust fund recovery penalty.

On June 11, 1997, the Appeals Officer informed counsel of her finding that the Debtor was responsible for payment of ASAP's trust fund taxes, and that she would recommend assessment of the penalty with respect to ASAP's unpaid liabilities for the third and fourth quarters of 1994. Counsel responded by submitting additional evidence and arguments in a letter of June 27, 1997. That letter concluded with the following comments:

> This claim accrued prior to Mr. Elstien's filing of a Chapter 13 Bankruptcy petition. The Internal Revenue Service failed to timely file its claim for the above taxes on its behalf. Therefore,

the Internal Revenue Service is barred from claiming such taxes. However, due to the costs of litigation and his desire to put this behind him, Mr. Elstien offers $15,000 to be paid through his bankruptcy proceedings to resolve the matter completely.

After the IRS notified the Debtor of its intent to assess the penalty, counsel again conveyed his belief that because of the Debtor's bankruptcy filing, the taxes could not be collected. In a letter of July 23, 1997, the Debtor's attorney stated as follows:

> [T]he Internal Revenue Service cannot act to collect the debt which you are proposing to assess against Mr. Elstien. Enclosed is a copy of the original bankruptcy filing dated October 7, 1996, and our amended filing putting the Internal Service on notice of the 1994 trust fund recovery penalty. When the Internal Revenue Service filed a proof of claim, omitted the trust fund penalty as extra liquidated or contingent liability. Further, an additional proof of claim was filed by our office and approved by the court on June 2, 1997 (see enclosed) amending our plan to accommodate further taxes.
>
> As such, the Service is stayed from collecting any trust fund taxes from Mr. Elstien.

■ The "amended filing" referred to in counsel's letter is undoubtedly the amended schedule of debts that listed a debt for "1994 trust fund recovery penalty" in the amount of $10, without identifying ASAP. That was filed a few days before the appeals officer's letter acknowledging that she had been told about the bankruptcy, but there is no indication that the amended

schedule itself was sent to her. It was, however, served on other IRS offices. Although the correspondence in the record suggests that the Debtor's attorney did not advise the Appeals Officer of deadlines in the case, the Appeals Officer's letter of December 4, 1996, establishes that the IRS had timely notice both of the Debtor's bankruptcy case and of his intent to deal with the trust fund penalty in that case. Nevertheless, the IRS did nothing to protect its interests until more than two years after it learned of the bankruptcy, and long after the statutory time limits for the simplest procedures (*e.g.*, filing a proof of claim or objecting to confirmation) had passed. Indeed, this motion was filed on December 11, 1998, a year after the time for revocation of plan confirmation had passed.[3]

The facts relating to the IDR motion are simpler. On February 20, 1996, the IDR issued a Notice of Penalty Liability ("NPL"), proposing a responsible officer assessment for sales taxes against the Debtor. Two days later, the IDR issued the Debtor a Notice of Deficiency ("NOD"), proposing assessment for withholding tax. The notices of assessments were also issued against three other officers of ASAP. All of the former officers, including the Debtor, filed protests and requested administrative hearings; the Debtor's request was made in June, four months before he filed his bankruptcy petition.

The administrative proceedings continued post-petition but the IDR and administrative law judge were not told that a bankruptcy case had been filed. In February, 1999, however, another former officer of ASAP filed a motion to stay the

---

3. Section 1330(a) provides that "[o]n request of a party in interest at any time within 180 days after the date of the entry of an order of confirmation under section 1325 of this title, and after notice and a hearing, the court may revoke such order if such order was procured by fraud." *See Branchburg Plaza Assoc., L.P. v. Fesq (In re Fesq)*, 153 F.3d 113, 118–19 (3d Cir.1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 1253, 143 L.Ed.2d 350 (1999) (noting that procurement through fraud is the sole basis for revocation of confirmation); *In re Pence*, 905 F.2d 1107, 1110 (7th Cir.1990) (same). Where a modified plan is confirmed, the time period under § 1330(a) begins to run on the date of that confirmation order that was allegedly procured by fraud. *In re Hoppel*, 203 B.R. 730 (Bankr.D.Mont.1997).

state proceedings because of the IRS motion in the Debtor's bankruptcy case. The state proceeding was stayed, and the IDR brought its present motion in May, 1999. It is undisputed that the Debtor did nothing to notify the IDR of this case and that the IDR had no actual knowledge of the case before the claims bar date or confirmation of the original or amended plans.

The Debtor has acknowledged that the any liability to the IDR will not be discharged due to failure to give the IDR notice of this bankruptcy case. The Debtor has, therefore, agreed to an order lifting the stay but objects to a dismissal of this case. The Debtor contends that failure to list the IDR was an "innocent omission." The Debtor claims that "he did not believe, due to the fact that he had not been personally assessed, that it was necessary to list IDR as a creditor. He, therefore, never told his bankruptcy attorneys." Response to Motion to Dismiss at p. 4. Even if this Court were to accept the Debtor's explanation (which is difficult because, among other reasons, the schedules allow the listing of a liability as "disputed"), the Debtor has failed to offer any explanation for his failure to list the IDR administrative proceeding or his involvement with ASAP on the statement of financial affairs.

## DISCUSSION

■ If the IRS were the only claimant with a motion to dismiss, this would be a tough case because both parties would deserve to lose. The Debtor filed false schedules, when accurate schedules would have disclosed that he was ineligible for chapter 13 relief and resulted in the early dismissal of his case. There is no argument that the proposed trust fund recovery penalty was not a claim under § 101(5) (" 'claim' means—(A) right to payment, whether or not such right is ... disputed").[4] Even if the Debtor made such an argument, it would be inconsistent with the amended schedule that listed a $10 liability for the 1994 trust fund recovery penalty. By filing that amendment, the Debtor acknowledged the disputed claim, but listed an amount that bore no relationship to the actual claim, but was so low that it would raise no obvious question of eligibility for chapter 13 relief.

■ The IRS, on the other hand, had actual knowledge of the bankruptcy case in ample time to file a proof of claim, move to dismiss the case, and object to confirmation of the plan, yet it did nothing for two years. Congress and the courts have decreed that there are times when the misfeasor prevails over the merely negligent if the negligence persists too long. For example, although fraud is grounds (the only ground) for revocation of confirmation of a chapter 13 plan, that revocation must be sought within 180 days. § 1330(a). Also, as the Debtor argues, there is authority to the effect that if the basis for dismissal of a case arose before confirmation of the plan, and no motion to dismiss is filed until after confirmation, res judicata may bar dismissal.

■ Section 1307(c) provides that "on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of

---

4. As already noted, before the Debtor filed his petition for relief under chapter 13, the IRS had proposed an assessment of a trust fund recovery penalty of $553,427.50. At that time of that filing, § 109(e) provided that "[o]nly an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $250,000 ... may be a debtor under chapter 13 of this title.". Under the case law, it is well-established that the IRS' claim for unassessed trust fund taxes is a noncontingent, liquidated, unsecured debt within the meaning of § 109(e). *E.g., Mazzeo v. United States (In re Mazzeo),* 131 F.3d 295, 305 (2d Cir.1997); *United States v. Verdunn,* 89 F.3d 799, 803 (11th Cir.1996); *Jones v. United States (In re Jones),* 129 B.R. 1003, 1006 (Bankr.N.D.Ill.), *aff'd,* 134 B.R. 274 (N.D.Ill. 1991). *See also In re Knight,* 55 F.3d 231, 234 (7th Cir.1995) ( fact of a dispute does not remove the debt from the calculation under § 109(e)); *In re Brooks,* 216 B.R. 838 (Bankr. N.D.Okla.1998).

this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause ...." 11 U.S.C. § 1307(c). In addition to ineligibility under Section 109(c), lack of good faith in the filing of a chapter 13 petition is sufficient cause for dismissal of the case. *In re Love,* 957 F.2d 1350, 1354 (7th Cir. 1992). Where the amount claimed by a creditor is known by a debtor, but not disclosed in bankruptcy schedules, there is a question as the debtor's good faith. *See In re Redburn,* 193 B.R. 249, 256 (Bankr. W.D.Mich.1996).

■ Section 1327(a), however, provides that "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). As a general rule, a creditor's failure to raise an objection at a confirmation hearing or to appeal from the order of confirmation will preclude the creditor from challenging the legality of the plan or its provisions at a later point in time. *In re Chappell,* 984 F.2d 775, 782 (7th Cir. 1993); *In re Szostek,* 886 F.2d 1405, 1410 (3d Cir.1989); *Strong v. United States (In re Strong),* 203 B.R. 105, 113 (Bankr. N.D.Ill.1996); *In re Puckett,* 193 B.R. 842, 845–46 (Bankr.N.D.Ill.1996). Were objections of this nature not precluded, creditors would be permitted an end run around the 180–day limit on revocation of confirmation under § 1330(a).

■ Applying § 1327(a) here, the confirmation of the Debtor's plan precludes the IRS from asserting its arguments that the case should be dismissed because the Debtor is ineligible for chapter 13 relief. The order confirming a chapter 13 plan establishes that the requirements under § 1325(a) have been met, including the provision under § 1325(a)(1) that the plan comply with applicable provisions of the Code. *Jones,* 129 B.R. at 1006. Because § 109(e) is among those provisions, the order of confirmation has res judicata effect as against the IRS with respect to the question of eligibility for chapter 13 relief. *Id.,* see also *Franklin Federal Bancorp, FSB v. Lochamy (In re Lochamy),* 197 B.R. 384, 387 (Bankr.N.D.Ga.1995).[5]

It is less clear that the IRS should be barred from raising other grounds for dismissal, such as the Debtor's conduct with respect to the schedules and statement of financial affairs. There appears to be no clear authority that such matters are barred by the confirmation order. Confirmation requires a finding that the plan was proposed in good faith (§ 1325(a)(3)) and that issue is barred. But the present facts raise a broader question concerning the Debtor's conduct of the case, not merely proposal of the plan. *Cf. In re Love,* 957 F.2d at 1360 ("... the good faith analyses under Sections 1307(c) and 1325(a) are not identical.... That is, the good faith inquiry under Section 1307(c) is a broad inquiry focusing on the fairness involved in the initiation of Chapter 13 bankruptcy proceedings, while the good faith inquiry under Section 1325(c) is a more narrow inquiry focusing on the good faith with regard to the Chapter 13 plan.")

This Court has twice before dealt with chapter 13 debtors who failed to schedule tax claims. In both cases, the issue was raised even later in the case than it is here. As in this case, the debtors in *Jones v. United States (In re Jones),* 129 B.R. 1003 (Bankr.N.D.Ill.), *aff'd,* 134 B.R. 274 (N.D.Ill.1991) filed a chapter 13 petition after the IRS had proposed assessment of

5. The IRS's argument that *Matter of Escobedo,* 28 F.3d 34 (7th Cir.1994), precludes application of the doctrine of res judicata is incorrect. In *Escobedo* the debtor's plan did not comply with a mandatory provision of chapter 13 because it did not provide for full payment of priority claims. Notwithstanding confirmation of that plan, the court held that the case could be dismissed for failure to satisfy that mandatory requirement. In this case, however, the plan does provide for full payment of priority claims; the problem is not the terms of the plan, but that the IRS did not file a proof of claim.

a tax liability in an amount greater than the eligibility limit for chapter 13 relief. While the *Jones* debtors stated in their schedules that the IRS held a disputed, contingent and liquidated priority claim for zero dollars, they did not disclose that the IRS actually claimed over $650,000 in income tax, interest and penalties.

Although the debtors in *Jones* did not accurately schedule the amount of the claim, it was undisputed that the IRS received notice of the bankruptcy in time to file a proof of claim and that the Court was told of a tax dispute. Because the IRS claim in *Jones* related to the debtor's personal income taxes, the IRS did not need to connect the debtors to another entity. Therefore, although the failure to schedule the amount claimed by the IRS was misleading, the Debtors did nothing to deprive the IRS of effective notice. Indeed, the IRS wrote the Debtors that it intended to file a proof of claim in the case, but never did so.

The controversy in *Jones* came before the Court after the debtors had received their discharge and the case had been closed, when the IRS advised the debtors that they were still liable for the tax debt. When the debtors moved for a finding that the debt had been discharged, the IRS argued for the first time that the debtors were not eligible for chapter 13 relief.

In the *Jones* opinion, the Court observed that had the issue been raised, it would have found that the debtors were ineligible for relief under chapter 13. *Jones*, 129 B.R. at 1006. However, because the IRS had failed to file a claim or make any timely objection allowed along the path to confirmation and discharge, it was bound by the debtors' confirmed plan. *Id.* Responding to the IRS's argument that the eligibility requirements under § 109(e) are jurisdictional, and therefore not subject to waiver, the Court disagreed. *See id.* at 1007–10. Finally, the Court commented that even if it had the discretion under § 105(a) to use its equitable powers

to cancel the debtors discharge, the circumstances would not warrant that relief.

The IRS has proven to be a veritable Rip Van Winkle. Having failed to make any timely objection (e.g., eligibility, good faith, full disclosure, feasibility, fraud, etc.) allowed by the Bankruptcy Code along the Debtors' path to confirmation and discharge, and having failed even to file a claim (as required by Bankruptcy Rule 3002(a)) after alerting the Debtors it intended to do so, the IRS now petitions the Court to use its equitable powers to cancel the Jones' discharge. The Court declines to do so. *Id.* at 1011.

*Jones* is similar to this case because in both the IRS had actual notice of Debtor's bankruptcy in time to file a claim or take other action to protect its interests. *Jones*, however, arose at a later point in the process than the present issue; indeed, in *Jones*, the case was over. In *Jones*, the IRS had to argue that the Court lacked jurisdiction to grant the discharge in order to void it. Here, there has been no discharge and the case is still open. The Court has jurisdiction to dismiss it if grounds not barred by the confirmation order exist.

The second time this court dealt with a similar fact pattern was in *United States v. Trembath (In re Trembath)*, 205 B.R. 909, 914 (Bankr.N.D.Ill.1997), where, as in *Jones*, but unlike this case, the issue arose after discharge orders had been entered. This Court held, however, that the tax claim was not discharged.

■ Section 1328(a) provides that "[a]s soon as practicable after completion by the debtor of all payments under the plan, ... the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title ..." 11 U.S.C. § 1328(a). If a plan does not provide for a claim for priority taxes, that debt will not be discharged. In *Trembath* the Court held that the debtor's failure to properly schedule a claim for a

trust fund recovery penalty or to properly answer the statement of affairs meant the debt was not "provided for by the plan" and therefore not discharged. *Trembath,* 205 B.R. at 914. *See also In re Herndon,* 188 B.R. 562, 565 (Bankr.E.D.Ky.1995); *In re Gray,* 174 B.R. 228, 230 (Bankr.E.D.Ky. 1994).

 By its terms, the statute imposes on a debtor the obligation to include in its plan provision for the payment of priority tax claims. But inclusion of that language does not mean the claim will necessarily be paid. A tax creditor, like every other creditor, must then file a proof of claim so that the claim may be allowed, and the chapter 13 trustee will pay it according to the provisions of the plan. *See Strong v. United States (In re Strong),* 203 B.R. 105, 112 (Bankr.N.D.Ill.1996). If the plan provides for a debt, but the creditor fails to file a claim, the underlying debt will not be paid but will be discharged. *E.g., Lawrence Tractor Co. v. Gregory (In re Gregory),* 705 F.2d 1118, 1123 (9th Cir. 1983); *Border v. Internal Revenue Service (In re Border),* 116 B.R. 588, 595 (Bankr. S.D.Ohio 1990). Notwithstanding the priority status of a tax claim, this rule applies to the IRS. *United States v. Lee,* 184 B.R. 257 (W.D.Va.1995); *Ledlin v. United States (In re Tomlan),* 102 B.R. 790, 796 (E.D.Wash.1989), *aff'd,* 907 F.2d 114 (9th Cir.1990); *Thibodaux v. United States (In re Thibodaux),* 201 B.R. 827, 830–31 (Bankr.N.D.Ala.1996); *In re Sorge,* 149 B.R. 197, 202 (Bankr.W.D.Okla.1993); *Border,* 116 B.R. at 595; *Daniel v. United States (In re Daniel),* 107 B.R. 798, 803 (Bankr.N.D.Ga.1989).

 Because of the requirement that the creditor file a claim, even assuming appropriate language in a debtor's chapter 13 plan,[6] the debt will not be provided for by the plan if the creditor has not been given adequate notice of the chapter 13 proceedings. *Hairopoulos,* 118 F.3d at 1244. "The constitutional component of notice is based upon a recognition that creditors have a right to adequate notice and the opportunity to participate in a meaningful way in the course of bankruptcy proceedings." *Id.*

> The rule that a debt is provided for in a plan only if the creditor had adequate notice follows from the rule that a claim is allowed only if a proof of claim is filed. *See,* § 502(a). A creditor deprived of adequate knowledge will not file a proof of claim. In that event, the debt will not be paid no matter what the plan says.

*Trembath,* 205 B.R. at 913–14. Several decisions under § 1328(a) say that if a debtor's omissions on bankruptcy filings caused a creditor's failure to file a proof of claim, the debt owed the creditor is not discharged. *See, e.g., In re Tipton,* 118 B.R. 12, 14 (Bankr.D.Conn.1990); *Southtrust Bank of Alabama v. Gamble (In re Gamble),* 85 B.R. 150, 152 (Bankr.N.D.Ala. 1988). *See also Herndon,* 188 B.R. at 565; *Gray,* 174 B.R. at 230.

*Trembath* falls within this line of decisions. The *Trembath* debtors, like the present Debtor, had actually listed the IRS as a creditor in their schedules, but omitted information or falsely answered questions that would have alerted the IRS to the debtors' affiliations with corporations having liabilities for unpaid trust fund taxes. But unlike this case, the IRS did not learn of the bankruptcy cases until

---

**6.** The IRS does not dispute that the language of Debtor's plan is adequate to provide for its claim. In order to provide for an unsecured tax claim, a plan does not have the specifically name the governmental creditor. *IRS v. Hairopoulos (In re Hairopoulos),* 118 F.3d 1240, 1243 (8th Cir.1997). The phrase "provided for" simply requires that the plan "deal with" or "refer to" the claim. *Lawrence Tractor Co. v. Gregory (In re Gregory),* 705 F.2d 1118, 1122 (9th Cir.1983). For example, it is sufficient to state that "all claims entitled to priority under 11 U.S.C. § 507 shall be paid in full in deferred cash payments." *Trembath,* 205 B.R. at 912. Here, the Debtor's amended plan states that "[c]laims entitled to priority under 11 U.S.C. § 507 shall be paid in full in deferred cash payments as provided by the Petition . . ." GX 20, DX M.

after the case was over and the debtors had received their discharges. On those facts, this Court made the following determination:

> Here, the concealment of the prior business operations was the equivalent to failure to give notice of the pending bankruptcy petition since it precluded the IRS from tying the debtors' contingent liabilities for the trust fund taxes to the entity with the primary responsibility for payment. Where the petition does not give the creditor sufficient notice to allow the creditor to determine that a debt exists, it would be inconsistent with notions of due process and fundamental fairness to hold that the debt was "provided for by the plan."

*Id.* at 913.

In this case, as in *Trembath,* the Debtor incorrectly answered the questions that would have identified the delinquent corporation and allowed the IRS to connect the Debtor to that corporation. His amended schedule listed a trust fund recovery penalty debt, but did not identify the basis of that claim as ASAP. One important difference from *Trembath,* however, is that the Debtor here did notify an IRS employee with direct knowledge of the proposed trust fund recovery penalty of his bankruptcy case. At least one court has held that, notwithstanding a debtor's failure to comply with his duties to accurately schedule liabilities and provide requested information, a tax creditor's actual knowledge of the case is sufficient basis on which to find compliance with the condition of § 1328 that a debt be "provided for in the plan." *Leber v. Illinois Department of Revenue,* 134 B.R. 911, 916 (Bankr.N.D.Ill. 1991).

An answer to *Leber* might be that the statutory requirement that a debt be provided for in the plan should focus the inquiry on the debtor's conduct in the case: Did the debtor do all the law requires to treat with a claim in a chapter 13 case? Surely that would include truthful and complete statements in schedules and re-lated documents. Whether this Court would agree with *Leber,* however, need not be addressed because dismissal is both an available (since this case is still open and a discharge has not yet been granted) and more appropriate remedy than merely holding that the IRS claim is not discharged. That is particularly true because there are no bars to the IDR's motion to dismiss. Whatever res judicata problems might confront the IRS do not concern the IDR, which had no opportunity to litigate these issues.

■ The Debtor breached his duties under the bankruptcy code and rules and misled this Court into granting relief, confirmation of a plan, for which he was and is not eligible. He failed to accurately list his liabilities and simply lied in his statement of affairs. Although the Debtor has suggested some unpersuasive reasons why he did not list the trust fund and IDR claims, he has not offered any reason for answering "None" when asked if he had been an officer or holder of more than 5% of outstanding securities of a corporation in the two years before bankruptcy and if he was involved in any administrative proceedings. Although the IRS may now be barred from challenging the Debtor's eligibility, there is no compelling authority that precludes it from asserting that the Debtor's conduct constitutes cause for dismissal. And there is no reason to deny that relief to the IDR.

### CONCLUSION

For the reasons set forth above, the requests of the IRS and IDR to dismiss this case are granted and the case will be dismissed. All other requests for relief are moot and will be denied for that reason.