**In re Robert Lee WINDOM, Debtor.**

No. 98–34396.

United States Bankruptcy Court,
E.D. Tennessee.

Sept. 27, 2002.

Ann Mostoller, Esq., Mostoller, Stulberg & Whitfield, Oak Ridge, TN, for Robert Lee Windom.

Ronald D. Tuech, Esq., Law Office of Ronald D. Tuech, P.C., Johnson City, TN, for Universal Collection Systems.

Gwendolyn M. Kerney, Esq., Knoxville, TN, Chapter 13 Trustee.

### MEMORANDUM ON DEBTOR'S OBJECTION TO CLAIM

RICHARD S. STAIR, Jr., Bankruptcy Judge.

This contested matter is before the court on the Objection to Claim filed by the Debtor on June 19, 2002, as amended by an Amended Objection to Claim and Request for Repayment filed July 1, 2002 (collectively, Objection). By his Objection, the Debtor objects to the nonpriority unsecured claim filed by Universal Collection Systems (Universal) on behalf of First Tennessee Bankcard Center (First Tennessee) on April 2, 1999, in the amount of $4,139.88.[1] The Debtor seeks to have the claim disallowed pursuant to 11 U.S.C.A. § 502(b)(9) (West Supp.2002) because it was not timely filed. Additionally, the Debtor seeks repayment of all funds distributed to First Tennessee by the Chapter 13 Trustee pursuant to the Debtor's plan which was confirmed on December 2, 1998. Universal filed an Objection to Debtor's Objection to Claim on July 24, 2002, requesting that the Objection be dismissed as late-filed. Alleging that it was denied fundamental constitutional due process and notice because its claim was not scheduled by the Debtor, Universal also urges the court to allow the claim.

All issues will be resolved on the Joint Stipulations of Undisputed Facts and Doc-

---

1. Although the claim was filed by Universal, a collection agency, First Tennessee is designated as the creditor. The court will refer to Universal and First Tennessee interchangeably throughout this Memorandum.

uments filed by the parties on September 6, 2002, and on briefs.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(B) (West 1993).

## I

The Debtor filed the Voluntary Petition commencing his Chapter 13 case on October 2, 1998. The deadline for filing proofs of claim was February 10, 1999. Neither First Tennessee nor Universal was listed on the Debtor's schedules or on the mailing matrix filed with the petition. First Tennessee became aware of the Debtor's bankruptcy on March 15, 1999, and notified Universal on March 29, 1999. Universal subsequently filed First Tennessee's claim on April 2, 1999.

## II

The first issue the court must resolve is whether First Tennessee's claim, filed fifty-one days after the bar date, should be disallowed.

Section 502 of the Bankruptcy Code provides in material part:

(a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest ... objects.

(b) [I]f such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim ... and shall allow such claim ... in such amount, except to the extent that—

. . . .

(9) proof of such claim is not timely filed, except to the extent tardily filed as permitted under paragraph (1), (2),

or (3) of section 726(a) of this title [2] or under the Federal Rules of Bankruptcy Procedure, except that a claim of a governmental unit shall be timely filed if it is filed before 180 days after the date of the order for relief or such later time as the Federal Rules of Bankruptcy Procedure may provide.

11 U.S.C.A. § 502 (West 1993 & Supp. 2002). Additionally, Rule 3002(c) of the Federal Rules of Bankruptcy Procedure governs the time for filing proofs of claim, stating that "[i]n a ... chapter 13 individual's debt adjustment case, a proof of claim is timely filed if it is filed not later than 90 days after the first date set for the meeting of creditors ...." FED. R. BANKR. P. 3002(c).[3] This is an uncompromising deadline, as evidenced by Rule 9006, which states that "[t]he court may enlarge the time for taking action under Rule[ ] ... 3002(c) ... *only* to the extent and under the conditions stated in [that] rule[ ]." FED. R. BANKR. P. 9006(b)(3) (emphasis added).

Together, § 502(a) and Rule 3002(c) operate as a "strict statute of limitations." *SouthTrust Bankcard Ctr. v. Curenton (In re Curenton)*, 205 B.R. 967, 970 (Bankr.M.D.Ala.1995). Bankruptcy courts are therefore without the authority to extend the deadline and allow an untimely filed proof of claim over an objection, under legal or equitable grounds, and even absent proper notice of the bankruptcy filing or the bar date for filing proofs of claims. *See In re Miranda*, 269 B.R. 737, 740 (Bankr.S.D.Tex.2001); *In re Bennett*, 278 B.R. 764, 765 (Bankr.M.D.Tenn.2001); *In re Johnson*, 262 B.R. 831, 845 (Bankr.D.Idaho 2001) ("[the court] is sim-

---

**2.** These statutory exceptions apply only to Chapter 7 cases, not Chapter 13 cases. *See* 11 U.S.C.A. § 103(b) (West 1993); *United States v. Chavis (In re Chavis)*, 47 F.3d 818, 823–24 (6th Cir.1995).

**3.** Rule 3002(c) sets forth five exceptions to this time limit, none of which has application to this contested matter.

ply not permitted to equitably enlarge the time period for filing proofs of claim absent facts which place Creditors [sic] within one of the express exceptions of Rule 3002"); *In re Kristiniak*, 208 B.R. 132, 135 (Bankr.E.D.Pa.1997) (courts are precluded from exercising "any equitable extension of the bar date as a means of resolving the problem of an omitted creditor in a Chapter 13 case"); *see also* 4 KEITH M. LUNDIN CHAPTER 13 BANKRUPTCY §§ 283.1, 290.1 (3d ed.2000).

■ Universal argues that the Bankruptcy Code and Federal Rules of Bankruptcy Procedure must yield to fundamental constitutional due process considerations, thus allowing the court to exercise its equitable powers to essentially extend the bar date by allowing First Tennessee's claim. In support of this contention, Universal cites *I.R.S. v. Century Boat Co.*, 986 F.2d 154 (6th Cir.1993), and *United States v. Cardinal Mine Supply, Inc.*, 916 F.2d 1087 (6th Cir.1990). Both of these cases, however, were Chapter 7 cases, decided prior to the 1994 amendments to the Bankruptcy Code, in which § 502(b)(9) was added. They are, therefore, not applicable in this situation. *See In re Brogden*, 274 B.R. 287, 291–92 (Bankr.M.D.Tenn.2001).

First Tennessee's constitutional argument is blunted by the fact that, while disadvantaged by the disallowance of its claim, it is by no means totally prejudiced. Because First Tennessee's debt was not scheduled and was therefore not "provided for" in the Debtor's Chapter 13 Plan, its claim will not be discharged. *See* 11 U.S.C.A. § 1328 (West 1993 & Supp.2002) ("[A]fter completion by the debtor of all payments under the plan ... the court shall grant the debtor a discharge of all debts provided for by the plan ...."); *In re Curenton*, 205 B.R. at 971 (unsecured debt to credit card company not dis-

charged due to insufficient service on creditor). Accordingly, First Tennessee's debt will survive the Debtor's discharge. *See United States v. Hairopoulos (In re Hairopoulos)*, 118 F.3d 1240, 1246 (8th Cir. 1997) (insufficient notice to IRS did not "satisfy due process and fundamental fairness[, and so debts] were not 'provided for' by the plan and were therefore not discharged under [11 U.S.C.A.] § 1328(a)"); *In re Herndon*, 188 B.R. 562, 565 (Bankr. E.D.Ky.1995) (untimely claim of IRS must be disallowed, but because IRS was not listed in schedules and did not "receive notice in time to file a claim and participate in the debtors' plan, the [ ] claim remains fully collectible after the chapter 13 case is concluded"). Once the Debtor has completed his Chapter 13 Plan and the automatic stay has been terminated by the granting of the Debtor's discharge, First Tennessee may resume collection activities. *See* 11 U.S.C.A. § 362(c)(2)(C) (West 1993).

■ Universal also argues that the Debtor's delay of almost three and one-half years after the February 10, 1999 deadline in filing the Objection further evidences the inequity of disallowing First Tennessee's claim. However, the Debtor, as a party in interest, does not have a deadline for objecting to a proof of claim. *See* FED. R. BANKR. P. 3007; *In re Miranda*, 269 B.R. at 741; 4 COLLIER ON BANKRUPTCY ¶ 502.02[3][e] (Lawrence P. King ed., 15th ed. rev. 2002) ("Bankruptcy Rule 3007 sets no time period within which the trustee [or other party in interest] must object to the allowance of a claim.").

In summary, as First Tennessee's claim was filed after the February 10, 1999 bar date for filing proofs of claim, it must be disallowed.

## III

The second issue before the court is whether First Tennessee, its claim having been disallowed, should be required to disgorge payments received from the Chapter 13 Trustee pursuant to the Debtor's confirmed plan.[4]

The decision to enter a disgorgement order is within the discretion of the bankruptcy court. "Although not founded in any statutory avoidance or recovery power, courts have authorized Chapter 13 trustees to recover overpayments to creditors." 1 KEITH M. LUNDIN CHAPTER 13 BANKRUPTCY § 61.1 (3d ed.2000).

The request for disgorgement usually arises after a motion by the Chapter 13 trustee. *See, e.g., United States v. Richman (In re Talbot),* 124 F.3d 1201, 1209 (10th Cir.1997) (the bankruptcy court had the authority to order disgorgement of funds received in derogation of the confirmed Chapter 13 plan); *Stevens v. Baxter (In re Stevens),* 187 B.R. 48 (Bankr. S.D.Ga.1995), *aff'd in part, rev'd in part, sub nom Ford Motor Credit Co. v. Stevens,* 130 F.3d 1027 (11th Cir.1997) (Chapter 13 trustee may recover overpayments to creditors); *Kerney v. Capital One Fin. Corp. (In re Sims),* 278 B.R. 457, 477 (Bankr. E.D.Tenn.2002) ("a trustee's authority to recover overpayments from a creditor is implied or contemplated by the Bankruptcy Code notwithstanding the absence of a specific Bankruptcy Code provision expressly granting such authority").

Occasionally, courts have also ordered disgorgement upon objections to claims by debtors when equity required. *See In re Sims,* 278 B.R. at 484 (Chapter 13 debtors have standing to seek recovery of overpayments by the Chapter 13 trustee to creditor filing fraudulent proofs of claim); *United States v. Clifford (In re Clifford),* 255 B.R. 258, 266–67 (D.Mass.2000) (ordering Internal Revenue Service to disgorge overpayments made outside the plan back to the bankruptcy estate after objection by debtor).

On the other hand, courts do have some leeway to make equitable considerations absent any statutory requirements to the contrary. *See* 11 U.S.C.A. § 105(a) (West 1993) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."). A bankruptcy court must weigh the benefits and burdens in deciding whether to enter a disgorgement order in an effort to reach "a just result." *In re Vecchio,* 20 F.3d 555, 560 (2d Cir. 1994).

In a situation similar to the present one, the Ninth Circuit Bankruptcy Appellate Panel applied the doctrine of laches and refused to require a creditor to repay funds when the debtors waited four and one-half years to object. *Shook v. CBIC (In re Shook),* 278 B.R. 815 (9th Cir. BAP 2002). The debtors listed Contractors Bonding and Insurance Co. (CBIC) as an unsecured creditor in their schedules and did not provide for payment of its claim in their plan. *Id.* at 818. CBIC filed a secured claim, based upon a judgment obtained almost one year prior to the bankruptcy. *Id.* The plan, which provided for payment of only secured and priority tax debt, was confirmed, without objection by CBIC, in March 1996, and in June 1996, the trustee served a notice of intent to pay, requesting objections to claims within thirty days. *Id.* at 818–19. No objection was filed by the debtors, and CBIC was paid in full. *Id.* at 819. The debtors discovered

---

4. The record does not establish the amount First Tennessee has received from the Chapter 13 Trustee.

that the claim had been paid as secured when attempting to sell their home in 2000 and filed an objection to the claim. *Id.* The bankruptcy court overruled the objection based upon the doctrine of laches, and the debtors appealed. *Id.* at 820.

The Bankruptcy Appellate Panel explained that in order for the affirmative defense of laches to apply, CBIC was required to show "an inexcusable delay in the exercise of a known right, and that it was thereby prejudiced." *Id.* at 830. The court viewed the debtors' objection in the context of the case's progression, noting that, at the time of the objection to CBIC's claim, the debtors' plan was confirmed and nearly completed, the claims against the estate had been determined for the purposes of distribution years before, the trustee had given notice of distribution, the debtors did nothing for over four years, and CBIC had been paid in full. *Id.*

Next, the court determined that CBIC would be prejudiced if required to disgorge the funds. *Id.* at 831. First, the court stated that "prejudice is presumed from delay." *Id.* Second, and more substantively, the court noted that CBIC had released its judgment lien against the creditors after receiving payment in full from the Chapter 13 trustee, thereby changing its legal position in reliance thereon. *Id.*

Finally, the court determined that the debtors' undue delay in bringing their objection placed a burden on the court and on the parties, bringing into issue the "integrity of the chapter 13 process itself." *Id.* Finding that all equitable considerations weighed heavily against the debtors, the Panel held that "the reorganization process should not be undermined because of Debtors' voluntary inactivity and long-

dormant inattention to detail." *Id.* Accordingly, it affirmed the bankruptcy court's decision.

Here, there are two factors to be weighed in determining whether First Tennessee should be required to disgorge payments received from the Chapter 13 Trustee on its claim. First, the Debtor has stipulated that this is a valid debt which he owes. In the Joint Stipulations of Undisputed Facts and Documents filed by the parties, the Debtor contends that he should not have to pay First Tennessee's debt "solely because the proof of claim was filed after the bar date to file claims." Joint Stipulations at ¶ 2.

Second, and most importantly, First Tennessee's claim was filed on April 2, 1999. The Debtor waited more than three years to object to this claim. The Chapter 13 Trustee began disbursements to this creditor pursuant to the Debtor's plan, based on the statutory mandate of § 502(a) that "[a] claim . . . , proof of which is filed . . . , is deemed allowed . . . ." 11 U.S.C.A. § 502(a). In the court's opinion, the Debtor has waited an unreasonable amount of time to object.

Because First Tennessee's claim was not timely filed, it cannot and will not be allowed. However, after applying equitable considerations and weighing the facts of this case, the court finds that it would be inappropriate to direct First Tennessee to disgorge the dividend it has received to date from the Chapter 13 Trustee.[5]

An order consistent with this Memorandum will be entered.

---

**5.** Moreover, as there are no unsecured creditors listed in the Debtor's statements and schedules, and the Chapter 13 Plan, confirmed on December 2, 1998, does not pro-vide for any disbursement to unsecured creditors, this decision will not therefore adversely affect other unsecured creditors.