### In re Terry C. BRYANT and Janet L. Bryant, Debtors.

### No. 00–45779–DML–13.

United States Bankruptcy Court, N.D. Texas, Fort Worth Division.

March 8, 2006.

---

Clifford Franklin McMaster, Fort Worth, TX, for Debtors.

## MEMORANDUM OPINION

D. MICHAEL LYNN, Bankruptcy Judge.

Before this court is Debtors' Motion to Hold the Internal Revenue Service in Contempt and Impose Sanctions (the "Motion") and the motion of the Internal Revenue Service to quash the Motion (the "IRS" and the "IRS Motion"). Together with briefs filed by each of Debtors ("Debtors' Brief") and the IRS ("IRS Brief"), the parties have submitted a Stipulation of Facts (the "Stipulation"). The IRS has also submitted the affidavit of Ahtatcha Hendrix, an IRS employee (the "Hendrix Affidavit"). At a hearing on December 29, 2005, the parties agreed the court should decide the Motion based on briefs without an evidentiary hearing or oral argument.

The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(a) and 157(b)(2). This Memorandum Opinion constitutes the court's findings of fact and conclusions of law. FED. R. BANKR. P. 9014 and 7052.

### I. Background

Debtors were principals of a corporation known as Bryler, Inc. ("Bryler").[1] Bryler incurred liability for certain FICA and withholding taxes in 1997 and 1998. Bryler ceased doing business in 1999.

On March 27, 2000, Debtors filed a chapter 7 petition initiating case no. 400–41502–MT. In that case Debtors scheduled the IRS and on their schedule of priority claims reflected a debt to the IRS for income taxes from 1997 and 1998. Debtors also provided an incomplete answer to question 16 (now question 18 on Official Form 7) on their statement of affairs, reflecting their ownership of the stock of (the then defunct) Bryler, but not providing the other information (such as tax I.D. number) required by the question. Debtors also listed the stock in Bryler on their schedule of personal property.

Following their discharge in their chapter 7 case, Debtors, utilizing the so-called chapter 20 strategy (*see Johnson v. Home State Bank,* 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991)), promptly filed a chapter 13 petition (the pending case). The statement of affairs provided to Debtors by their counsel did not include any questions beyond number 15.[2] Thus, Debtors did not provide information relating to Bryler in their statement of affairs—though they did again refer to their ownership of the stock of Bryler in their personal property schedules. Debtors again scheduled the IRS as a creditor and reflected on their schedule of priority unsecured debts income taxes owed to the IRS from 1997 and 1998.

The IRS, having received notice of Debtors' chapter 13 case, timely filed a claim for $18,182.02 for the income taxes owed by Debtors. Thereafter, the IRS determined in 2002, after the bar date in Debtors' chapter 13 case, that Bryler had

---

**1.** Bryler was originally named Bryant–Shisler, Inc.

**2.** Prior to 1991, different statements of affairs were used if a debtor was engaged in business than if the debtor was not engaged in business. *See* 1991 Advisory Committee Note to Official Form 7. Debtors' counsel apparently generated the old, not-engaged-in-business form on his computer for Debtors' use. Stipulation, ¶ 3; Debtor's Brief, p. 1. Debtors' counsel erroneously provided his clients this form as Debtors were no longer engaged in business.

failed to deposit for payment to the IRS trust fund taxes of approximately $17,000 for 1997 and 1998. Thus, the IRS assessed a penalty under 26 U.S.C. § 6672 against Debtors [3] for such taxes.[4]

Shortly before January 2, 2002 the IRS sent Debtors letters advising them of the proposed assessment (Stipulation, ¶ 11). Counsel for Debtors responded with a letter to the IRS citing Debtors' pending chapter 13 case. In May of 2002, the IRS sent Debtors a letter notifying them of a levy respecting the trust fund taxes. Again, Debtors' counsel responded that Debtors were in bankruptcy. The IRS apparently ceased pursuing Debtors at that time.

Debtors completed their payments under the plan, including full payment (without interest; *see* section 1322(a)(2) of the Bankruptcy Code (the "Code"))[5] of the priority portion of the claim filed by the IRS. On July 21, 2005 the court entered an order discharging Debtors pursuant to Code § 1328(a). In September and again in October of 2005, the IRS once more sent Debtors notices of intent to levy for (1) the Bryler trust fund taxes, and (2) interest on the income taxes, the claim for which was paid pursuant to Debtors' plan.[6] Counsel for Debtors again wrote to the IRS protesting, but this time the IRS persisted in its pursuit of Debtors. Consequently, Debtors reopened their chapter 13 case and filed the Motion.

## II. Discussion

■ The parties in their briefs have addressed (1) whether notice to the IRS was sufficient for Debtors to be discharged of the trust fund tax claim; (2) whether the trust fund tax claim was "provided for" (*see* Code § 1328(a)) by Debtors' plan such that it could be discharged; and (3) whether the court may award Debtors their costs and attorneys' fees incurred in pursuing the Motion without Debtors first exhausting the IRS's administrative procedures for dealing with claims against the IRS. The Motion, however, asks only "that the court enter an order directing the [IRS] to appear ... and ... show cause why it should not be held in and punished for contempt ...." Motion, p.3. In the IRS Motion, the IRS asks only that "the Court quash Debtors' motion for contempt and for attorneys [sic] fees."

The Motion and the IRS Motion do not require that the court reach the issues briefed by the parties. The "facts" provided to the court indicate that the IRS sought, post-discharge, to collect interest on a claim fully satisfied and discharged.

---

**3.** It is not clear to the court whether both Debtors or just Mr. Bryant was the subject of the IRS letters. *See* Debtors' Brief, p. 2, Stipulation, ¶ 10, Hendrix Affidavit, ¶ 15. The court thus refers to "Debtors" as recipients of the correspondence.

**4.** The timing of these events is also unclear to the court (*see id.*). However, since it is clear that the IRS first identified Debtors as potentially liable for Bryler trust fund taxes after Debtors' chapter 13 bar date had passed and about three years before completion of Debtors' chapter 13 plan, the court need not pinpoint when letters were exchanged or when the penalty against Debtors was actually assessed.

**5.** 11 U.S.C. § 101 *et seq.* (2005). Most of the amendments made to the Code by the Bankruptcy Abuse and Consumer Protection Act, signed into law on April 17, 2005, are not effective in Debtors' case.

**6.** Debtors' Brief, p. 2. Neither the Hendrix Affidavit nor the IRS Brief disputes that the notices of levy sought unpaid interest on the income tax claim. As the Stipulation provides that the facts it reflects "supplement those uncontested facts found in the parties' briefs ..," for purposes of deciding the Motion the court accepts Debtors' Brief on this point.

Section 1328(a) of the Code plainly states that a debtor completing the payments required by his or her plan is entitled to "a discharge of all debts provided for by the plan ...." There is no question that the income tax claim of the IRS was provided for by Debtors' plan. Code § 524(a)(2) provides that a discharge

> (2) operates as an injunction against the commencement or continuation of an action, the employment process, or an act, to collect, recover or offset any [debt discharged under section 1328] as a personal liability of the debtor, whether or not discharge of such debt is waived...

■ By seeking to recover interest on a discharged claim, the IRS certainly appears to have violated Debtors' discharge injunction and to be in contempt. The Motion thus must be granted and the IRS directed to show any cause why it should not be held in contempt and sanctioned.[7] Concomitantly, the IRS Motion must be denied.

■ Though the court need not address at all the issue of whether the IRS trust fund tax claim against Debtors was discharged in order simply to grant the Motion and deny the IRS Motion, in terms of the relief actually sought in the Motion, the court would grant the Motion and order the IRS to show cause why it should not be held in contempt under Code § 524(a)(2) for attempting to collect the trust fund tax claim from Debtors. Debt-

ors have shown the IRS had actual notice of this chapter 13 case. It is therefore the burden of the IRS to show that the notice to it was insufficient to satisfy the standard of fundamental fairness.[8] *See, e.g., Committee on Grievs. of the United States Dist. Court v. Feinman,* 239 F.3d 498, 502 (2d Cir.2001) (violation of due process through insufficient notice is an affirmative defense). The court is not prepared to find the IRS has met that burden.

■ The parties apparently expected the court to reach the merits of the issue of discharge of the trust fund claim. The discharge issue, however, is properly raised in an adversary proceeding. *See* FED. R. BANKR. P. 7001(4); 10 COLLIER ON BANKRUPTCY ¶ 7001.05[2] (15th ed. rev'd 2005); *In re Harmon,* 324 B.R. 383, 387 (Bankr.D.Fla.2005).

■ A bankruptcy court has discretion to treat a contested matter as an adversary proceeding. *See In re Swizzlestick, L.L.C.,* 253 B.R. 264, 267 (Bankr.W.D.Mo. 2000) (citing *In re Command Services Corp.,* 102 B.R. 905, 908 (Bankr.N.D.N.Y. 1989)) (court may consider an issue improperly raised in a contested matter rather than in an adversary proceeding where it determines that no prejudice will result); *see also* 10 COLLIER ON BANKRUPTCY ¶ 9014.05 (15th ed. rev'd 2005) (pursuant to FED. R. BANKR. P. 9014(c), the court may at any stage of a contested matter direct that any or all of the rules governing adversary proceedings shall apply). The case at bar,

7. The court does not understand the IRS to argue the court may not sanction it absent completion of administrative procedures. Rather, the court understands the position of the IRS to be that Debtors may not recover costs or fees without first filing a claim with the IRS. In any event, absent resolution of the question of whether the trust fund claim of the IRS was discharged, the court cannot assess the sanctions appropriate to the IRS's apparent contempt.

8. The due process clause does not apply to governmental entities; instead, courts apply a test of fundamental fairness. *See In re Trembath,* 205 B.R. 909, 913 (Bankr.N.D.Ill.1997) (citing *In re Anderson,* 159 B.R. 830, 836–838 (Bankr.N.D.Ill.1993) (in turn citing *United States v. Cardinal Mine Supply, Inc.,* 916 F.2d 1087 (6th Cir.1990))).

however, is not posed procedurally to raise and on its face does not in fact require disposition of the discharge issue. It would be a stretch for the court to use the occasion of deciding the Motion, given the limited relief it does request, to reach the discharge issue.

Whether a trust fund tax liability should be discharged on facts like those presented is not an inconsequential issue. As such, the court is not prepared to decide it in a procedurally defective context. If properly brought before the court, a more complete record [9] and more thorough briefing [10] might be provided by the parties. The court will not short-circuit the process; if decision of the discharge issue must be made on the basis of a thin record and little briefing, it should at least be made in a correct procedural context.

Accordingly, the parties may raise the discharge issue properly through an adversary proceeding. While the issue may arise in connection with contempt proceedings, the court need not now either determine whether disposition of the discharge issue would be necessary or appropriate in connection with a decision on contempt or determine the merits of the issue itself.

### III.  Conclusion

For the foregoing reasons, and to the extent only of the relief therein sought, the Motion is GRANTED. The IRS Motion is DENIED. Debtors' counsel is directed to prepare and submit an order to show cause directed to the IRS that is consistent with this memorandum opinion.

---

9. Evidence that might be relevant include (but is not necessarily limited to) the actual correspondence of Debtors' counsel with the IRS, Bryler's tax returns, and Bryler's fate.

10. For example, the parties have not addressed the res judicata effect of the confirmation and discharge orders. *See In re Elstien,* 238 B.R. 747, 753 (Bankr.N.D.Ill.1999).